[No. B015387. Second Dist., Div. Four. June 9, 1986.]

JAMES FOGARTY CORRIGAN et al., Plaintiffs and Appellants, v. BJORK SHILEY CORPORATION, Defendant and Respondent.

**COUNSEL**

Magana, Cathcart, McCarthy & Pierry, Brian R. Magana and Deborah Mitzenmacher for Plaintiffs and Appellants.

Kindel & Anserson, Palmieri, Tyler, Wiener & Wilhelm, Frank C. Rothrock and Paul R. Johnson for Defendant and Respondent.

## OPINION

**ARGUELLES, J.**—Australian James Corrigan and his two sons (appellants) appeal the trial court's order of a stay of their action for wrongful death brought against California-based Bjork Shiley Corporation (respondent), a manufacturer of a heart valve prosthesis, based upon the doctrine of forum non conveniens. We reverse the stay order.

### FACTUAL AND PROCEDURAL BACKGROUND

This is an action for wrongful death arising out of the demise of Elsie Joan Corrigan, age 49, on September 20, 1982. Mrs. Corrigan was a citizen and resident of New South Wales, Australia. On September 8, 1982, she had undergone a mitral (heart) valve replacement with the implantation of a Bjork Shiley disc prosthesis with a 70-degree opening angle. The surgery was performed by Australian doctors in an Australian hospital. This particular heart valve prosthesis was imported from its sole manufacturer, Bjork Shiley Corporation (a California corporation with its principal place of business in Irvine, California).

On September 20, several of the components of the valve allegedly fragmented and separated from the valve, entering Mrs. Corrigan's circulatory system. A resulting blockage allegedly caused cardiac arrest from which she could not be resuscitated.

Mrs. Corrigan was survived by appellants, who brought an action in Los Angeles County for wrongful death on September 19, 1983. The complaint alleged products liability negligence, strict liability and breach of express and implied warranties. Respondent answered the complaint without alleging third party negligence.

Discovery ensued, and on June 14, 1985, respondent filed a motion to dismiss based on the grounds that Los Angeles County was an inconvenient forum and that Australia was the proper alternative forum. Respondent presented some evidence that the hospital had removed the 70-degree valves from the rigid container designed to protect the valves from damage during shipping, sterilization and other handling. Respondent contended that the hospital apparently then wrapped the 70-degree valves in paper table napkins and paper bags to sterilize them, contrary to respondent's written instructions regarding recommended sterilization procedures.

Respondent also presented evidence that the 70-degree valve was exported to Australia under federal law and was never sold or distributed in the United States. Respondent stopped the manufacture and sale of the valve in January

1983, pursuant to Food and Drug Administration (FDA) withdrawal of approval for manufacture.

Respondent also stipulated to submit to Australian jurisdiction and to pay any judgment rendered against it there, to comply with all discovery orders, and to exercise its best efforts and pay the costs of making any 10 of its past or present employees available to testify at trial in Australia.

In its opposition, filed July 2, 1985, appellants presented considerable evidence of valve design failure, including the fact that the United States Department of Health and Resources concluded after metallurgical tests that welding problems caused the valve failures, necessitating total redesign. Appellants also contended that the FDA withdrew permission to export the valve because of problems inherent in the valve itself.

Appellants also presented evidence that respondent possesses at least 20 failed valves which had been exported to 8 different countries, and that the 70-degree valves were made by retooling 60-degree valves which were sold in the United States. Litigation over alleged failures in the 60-degree valves is apparently pending in this country.

On July 10, 1985, the court denied the motion to dismiss, but stayed the action pursuant to Code of Civil Procedure section 410.30, subdivision (a) so that it might be brought in Australia; finding that the prejudice to respondent was greater if the action remained in California than that to appellants if it were brought in Australia. This appeal followed.

## CONTENTION

Appellants contend that the trial court abused its discretion by staying the action based upon the doctrine of forum non conveniens.

## DISCUSSION

### I. Doctrine of Forum Non Conveniens

The doctrine of inconvenient forum is codified in Code of Civil Procedure section 410.30, subdivision (a) which provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

██ ██ "[T]he doctrine of inconvenient forum is not juris-
dictional [citations]" (*Pham* v. *Wagner Litho Machinery Co.* (1985) 172
Cal.App.3d 966, 972 [218 Cal.Rptr. 476]), and thus our inquiry presupposes
that jurisdiction in either forum is good.[1]

██ The principle of forum non conveniens is that a court may resist
imposition upon its jurisdiction even when jurisdiction is authorized by a
venue statute. (*Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 310.)
"That doctrine is typically applied to litigation where all of the parties are
out-of-state residents and where the cause of action arose outside the forum
state. [Citation.]" (*Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738,
742 [59 Cal.Rptr. 101, 427 P.2d 765].)

██ The act of staying an action is an act of discretion which "may not
be arbitrary; it must be exercised in conformity with the spirit of the law
and in a manner to subserve and not impede the ends of substantial justice.
[Citation.]" (*Great Northern Ry. Co.* v. *Superior Court* (1970) 12
Cal.App.3d 105, 110 [90 Cal.Rptr. 461].) It is regarded as a "'drastic
remedy to be exercised . . . with caution and restraint.' [Citation.]" (*Hem-
melgarn* v. *Boeing Co.* (1980) 106 Cal.App.3d 576, 580 [165 Cal.Rptr.
190].) ██ Where the court has abused its discretion, the stay must be
lifted. (*Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 313-314.) How-
ever, the discretion of the trial court should be disturbed on appeal only
when the order is unsupported by substantial evidence. (*Dendy* v. *MGM
Grand Hotels, Inc.* (1982) 137 Cal.App.3d 457, 460 [187 Cal.Rptr. 95].)

██ In making its determination to stay or dismiss the court may take
into account "'any consideration which legitimately bears upon the relative
suitability or convenience of the alternative forums.' [Citation.]" (*Dendy*
v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d at p. 461.)

The Judicial Council comment to Code of Civil Procedure section 410.30
states that two considerations are most important: first, that "'since it is
for the plaintiff to choose the place of suit, his choice of a forum should
not be disturbed except for weighty reasons. . . .' [Citations.] The second
is that 'the action will not be dismissed unless a *suitable* alternative forum
is available to the plaintiff. . . .' [Citation.]" (*Holmes* v. *Syntex Labora-
tories, Inc.* (1984) 156 Cal.App.3d 372, 379 [202 Cal.Rptr. 773].) "The
remaining factors have been characterized as involving either the private
interests of the parties or the public's interest in the litigation. [Citation.]"

---

[1]It is recognized that one of the appropriate forums in which an action against a corporate
defendant may be brought is the state of its incorporation or principal place of business.
(*Brown* v. *Clorox Co.* (1976) 56 Cal.App.3d 306, 311 [128 Cal.Rptr. 385].)

(*Ibid.*) The factors are numerous.[2] "[B]asically the court looks to the relative convenience and fairness to the parties and witnesses in favoring one forum over another, which forum will best serve the interests of judicial efficiency, which forum is most able to obtain jurisdiction over parties and compel witnesses to testify, and the relative interest of each state in adjudicating the issue. [Citations.]" (*Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d at pp. 461-462, fn. omitted.)

## II. Neutral Factors

In approaching the balancing test required in the instant action, we first dispose of the factors which are basically neutral and do not require extensive discussion before taking up the two considerations deemed important by the Judicial Council and other factors which indicate a preference for a particular forum.

The Australian plaintiffs are willing to come to California in the prosecution of their action and to submit to this state's jurisdiction, whereas respondent has stipulated to submit to jurisdiction and pay any judgment that might be rendered in Australia. Thus, this factor appears neutral in our weighing process.

The present California action was commenced well within our state's statute of limitations; the applicable statute of limitations in Australia is six

---

[2] "They include the amenability of the parties to personal jurisdiction in this state and in the alternative forum; the relative convenience to the parties and trial witnesses of the competing forums; the differences in the conflict of law rules applicable in the competing forums; the selection of a convenient, reasonable and fair place of trial; defendant's principal place of business; the extent to which the cause of action arose out of events related to this state; the extent to which any party will be substantially disadvantaged by a trial in either forum; the relative enforceability of judgments rendered in this state or the alternative forum; the relative inconvenience to witnesses and relative expense to parties of proceeding in this state or the alternative forum; the significance and necessity of a view by the trier of fact of physical evidence not conveniently movable from the alternative forum; the extent to which prosecution of the action in this state would place a burden upon this state's judicial resources equitably disproportionate to the relationship of the parties or cause of action to this state; the extent to which the relationship of the moving party to this state obligates him to participate in judicial proceedings here; this state's interest in providing a forum for some or all of the parties; this state's public interest in the litigation; the avoidance of multiplicity of actions and inconsistent adjudications; the relative ease of access to sources of proof; the availability of compulsory process for attendance of witnesses; the relative advantages and obstacles to a fair trial; the burden upon jurors, local court and taxpayers of a jurisdiction having a minimal relation to the subject of the litigation; the difficulties and inconveniences to defendant, the court and jurors incident to the presentation of evidence by deposition; and the availability of the suggested forum. [Citation.] [¶] A court may not consider, however, the probability, if such exists, that a California jury may be more generous in its award than the proper forum. [Citation.]" (*Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at pp. 584-585.)

years (expiring on Sept. 19, 1988) and that alternative forum is available. Another basically neutral factor.

As to the relative convenience to parties and witnesses of trial in Australia, both sides are willing to shoulder the burden of trial in the forum which is less convenient from the perspective of their respective residences, and neither forum is more convenient from the standpoint of all the witnesses; therefore, this factor is essentially neutral. (See *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 312.) Each party is also willing to assume the expense of trial in the less convenient forum, so this factor is also neutral. Further, their relative ease of access to sources of proof would be about equally enhanced were trial to commence in their respective preferred forums. Any judgment rendered in either forum will be enforceable. The difficulty to the moving party, court and jurors created by the necessity of employing deposition testimony is not oppressive. Finally, the case does not turn on a view by the trier of fact of physical evidence which cannot be moved from the site of the accident.[3]

We turn then to the factors which require further analysis in reviewing the propriety of the trial court's decision.

We comment at the outset upon a recent decision of the Court of Appeal, First Appellate District, *Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372. In *Holmes,* British citizens filed a class action against Syntex, a Delaware corporation with its principal place of business in California, and its British affiliate, based upon Syntex's alleged "failure to warn" of known dangerous side effects in its oral contraceptives ingested by plaintiffs.

In *Holmes,* the court found that Britain was not a suitable alternative forum and that trial should be held in California, citing, among other reasons, the great weight given plaintiff's choice of forum regardless of the fact they were foreign residents, the inadequacies of British law evidenced in its lack of strict products liability law, the defendant's presence in and relationship to California, and California's interest in regulating the foreign marketing of defective products.

In our own case, with its important products liability basis, appellants strenuously urge that *Holmes* virtually dictates a reversal of the stay, while

---

[3]This case principally involves a small medical device and related surgical procedures, and is thus factually comparable to products cases such as *Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372, 379 (oral contraceptives) and *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306 (drain cleaner); rather than to cases such as *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576 (plane crash), or *Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d 457 (hotel fire), where a view of the accident site might be significant.

respondents urge that *Holmes* is anomalous and other decisions, including those handed down in federal court, mandate that the stay imposed by the trial court be upheld.

██ Concerning the first of the two factors deemed most important by the Judicial Council, the rule of "substantial deference" given to plaintiff's choice of forum, it has been said that plaintiff's choice "should be respected unless equity weighs strongly in favor of the defendant. [Citations.]" (*Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d 457, 460; accord *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d 105, 110; *Appalachian Ins. Co.* v. *Superior Court* (1984) 162 Cal.App.3d 427, 435 [208 Cal.Rptr. 627].)

Although the rule of substantial deference is not eliminated when plaintiff is foreign (either noncitizen or nonresident), the deference accorded his choice is less than that accorded the choice of a California resident. ██ This conclusion is obvious in the fact that "except in extraordinary cases a trial court has no discretion to dismiss an action brought by a California resident on grounds of forum non conveniens." (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 858 [126 Cal.Rptr. 811, 544 P.2d 947].) This limitation of the doctrine "does not rest on any conclusion derived from a balancing of conveniences; it reflects an overriding state policy of assuring California residents an adequate forum for the redress of grievances." (*Id.,* at p. 859.) Further, in *Bechtel Corp.* v. *Industrial Indem. Co.* (1978) 86 Cal.App.3d 45, 52-53 [150 Cal.Rptr. 29], it was said that the trial court has no discretion to stay *or* to dismiss where both plaintiff and defendant are California residents. This rule was not applied in multiparty litigation where some parties were not California residents. (See *Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d 457, 461.)

██ Therefore, in the case at bench, although the Australian plaintiffs' choice of a California forum is entitled to some deference, this consideration cannot dominate our decision.

### III. The Suitability of the Alternative Forum

We next concern ourselves with the second consideration found important in the Judicial Council comment and in *Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372, 381, the suitability of the alternative forum.

"The effect of different conflict of law rules or some other 'substantial disadvantage' from a change in forum may be of such a character as to deprive the plaintiff of a 'suitable' alternative forum. [Citation.]" (*Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372, 381.)

In its analysis of the difference between state and federal law after the United States Supreme Court decided *Piper Aircraft Co.* v. *Reyno* (1981) 454 U.S. 235, 250-251 [70 L.Ed.2d 419, 102 S.Ct. 252], the *Holmes* court stated that California attaches far greater significance to the possibility of an unfavorable change in applicable law resulting from a forum non conveniens dismissal (*Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d at p. 381) than the federal rule announced in *Piper*. In *Piper* the United States Supreme Court said that the possibility of an unfavorable change in law is not relevant unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 254 [70 L.Ed.2d at p. 435].) The rationale stated for this finding was that since ordinarily "plaintiffs will select that forum whose choice-of-law rules are most advantageous[,] . . . if the possibility of an unfavorable change in substantive law is given substantial weight . . ., dismissal would rarely be proper." (*Id.,* at p. 250 [70 L.Ed.2d at p. 432].)

The *Piper* court observed that choice of law analysis would become extremely important and courts would frequently be required to interpret law of a foreign jurisdiction and would have to compare rights, remedies and procedures available in each forum, which forum non conveniens was designed to avoid. (*Id.,* at p. 251 [70 L.Ed.2d at p. 432].)

It is clear, however, that California courts have demonstrated a willingness to assume the burden of resolving conflict of laws problems and will not invoke forum non conveniens doctrine simply to avoid a choice of law analysis. (See *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 313.)

In *International Harvester Co.* v. *Superior Court* (1979) 95 Cal.App.3d 652, 659-662 [157 Cal.Rptr. 324], the subject party of a cross-action for indemnity in a personal injury case filed in California moved for dismissal in favor of a Kansas forum where the accident occurred. The appellate court observed that under Kansas conflict of law rules a Kansas court would apply its own law of indemnity. Since it was at least an open question whether the cross-complainants would have *any* right of indemnity in Kansas, the court opined: "If they do not, the difference in applicable substantive law virtually dictates trial in California." (*Id.,* at p. 660.)

In *Chavarria* v. *Superior Court* (1974) 40 Cal.App.3d 1073, 1076 [115 Cal.Rptr. 549], the court engaged in a choice of law analysis to demonstrate that removal to Texas was proper. The *Chavarria* court found that in Texas choice of law was determined by the law of the place of injury, in this case California. Since damages were considered a substantive matter, plaintiffs

would not lose the double damage remedy provided under California law by transfer of the case to Texas. (*Ibid.*)

■ Thus, choice of law analysis is used in California forum non conveniens inquiries to determine whether the plaintiff or cross-complainant would effectively be denied a remedy, which would dictate trial here, as in *International Harvester,* or whether the remedy would be seriously affected, as in *Chavarria,* the absence of such an impact being an important factor in allowing a dismissal or stay of a California trial.

Under California law, the purpose of comparing the differences in conflict of law rules and the differences in substantive law which will be applied, once the choice of law has been made in each alternative forum, is not simply to decide which forum would provide the most advantageous law from the viewpoint of the plaintiff. To the extent *Holmes* explicitly or implicitly directs otherwise, we decline to follow it.

Several considerations support this conclusion.

■ First, the existence of unsettled procedural questions in the alternative forum does not make it unsuitable. In *Archibald* v. *Cinerama Hotels, supra,* 15 Cal.3d 853, 862, where Hawaii was the proposed alternative forum the court said: "[T]he existence of unsettled questions of Hawaiian procedure does not compel the trial court to conclude as a matter of law that Hawaii is not a suitable alternative forum. Uncertainties such as this concerning the suitability of the foreign forum have prompted our holding that a court cannot dismiss a suit by a true California plaintiff, but can stay that suit: the staying court can resume proceedings if the foreign forum proves unsuitable. [Citation.] California's appetite for litigation must not be so gluttonous as to compel it to engage in the trial of causes that are found by the court of first resort to be more conveniently resolved elsewhere, since if redress in the foreign jurisdiction proves abortive, California courts retain the option to resume proceedings." (Fn. omitted.)

■ Secondly, we bear in mind the often-cited proposition that the "probability that one forum may be more generous than the other may not be considered [citation], . . ." (*Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 588; accord *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d 105, 112; *Jagger* v. *Superior Court* (1979) 96 Cal.App.3d 579, 589 [158 Cal.Rptr. 163].) In *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at page 588, this proposition was invoked to demonstrate that where competing policy interests pointed to the alternative forum as more appropriate, the fact that less damages would be available therein was not controlling.

██ Finally, our own choice of law doctrine reveals a respect for the law of foreign jurisdictions which does not seek to weigh the worth of the social policy reflected in the laws of the respective forums, but instead focuses on which forum's governmental interest will be the more impaired if its law is not applied.

## IV. The Differences in Conflict of Law Rules in Each Forum

### A. Australian Law Would Be Applied in Australia.

Australia follows the "lex fori" rule of choice of law: the law of the forum applies to all tort actions brought in Australia, with exceptions not important here. (See *Walker* v. *W. A. Pickles Pty. Ltd.* (1980) 2 N.S.W.L.R. 281, 288-289; *Anderson* v. *Eric Anderson Radio and T.V. Pty. Ltd.* (1965) 164 C.L.R. 20, 40-42.)

Thus Australia will employ its own law. Were the case to be tried in Australia, discovery is not as liberal as are the same procedures in California; although trial in California would also be affected by Australian rules governing a foreign court's right to discover certain matters existent in Australia. (See *Application of Forsyth* (1984) 2 N.S.W.L.R. 327; *National Employers' Mutual General Association Ltd.* v. *Waind & Hill* (1978) 1 N.S.W.L.R. 372.) Substantively, appellants' causes of action based on strict liability and breach of warranty would be circumscribed, as would certain elements of damage. (See *Fletcher* v. *Topper's Drinks Pty. Ltd.* (1981) 2 N.S.W.L.R. 916; *Rowe* v. *Scanlan* (1969) 1 N.S.W.R. 43; *Naum* v. *Nominal Defendant* (1974) 2 N.S.W.L.R. 14.)

### B. California Choice of Law Principles Indicate That California Law Would Be Applied if the Trial Is Held in California.

██ California choice of law principles indicate that California law would govern this action were it to be tried in this state. ██ California choice of law rules rest on an analysis of the respective interests of the states or countries involved; the so-called "governmental interest" approach, the objective of which is "'to determine the law that most appropriately applies to the issue involved.' [Citation.]" (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 579-580 [114 Cal.Rptr. 106, 522 P.2d 666], fn. omitted.) ██ ██ ██ If both California and the foreign forum[4] have a strong interest in applying their own law, the court engages in a

---

[4] "'The governmental interests approach is applicable not only to situations involving multistate contacts but also to those involving a state of the United States vis-à-vis a political entity of a foreign country.' [Citations.]" (*Hernandez* v. *Burger* (1980) 102 Cal.App:3d 795, 798, fn. 1 [162 Cal.Rptr. 564].)

"comparative impairment" analysis, applying the law of the state whose interest would be more impaired "if its policy were subordinated to the policy of the other state." (*Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 320 [128 Cal.Rptr. 215, 546 P.2d 719]; see discussion in *American Bank of Commerce* v. *Corondoni* (1985) 169 Cal.App.3d 368 [215 Cal.Rptr. 331].)

"The Court *does not* 'weigh' the conflicting governmental interests in the sense of determining which conflicting law manifested the 'better' or 'worthier' social policy of the specific issue." (*Camp* v. *Forwarders Transport, Inc.* (C.D.Cal. 1982) 537 F.Supp. 636, 638; accord *Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d 313, 320.)

Although California has a general preference for its own law (*American Bank of Commerce* v. *Corondoni, supra,* 169 Cal.App.3d 368, 372) in *Camp* v. *Forwarders Transport, Inc., supra,* 537 F.Supp. at pages 638-639, the court concluded that once a conflict is found, California applies the "comparative impairment test, without any bias, preference or presumption against the law of the foreign state," based upon *Cable* v. *Sahara Tahoe Corp.* (1979) 93 Cal.App.3d 384 [155 Cal.Rptr. 770], and *Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d 313.

 Thus, it is clear that our own conflict of law rules require that we concentrate more on the comparative impairment of respective state interests than on the purported inadequacies of Australian tort law.

It has been repeatedly asserted that California has an important interest in regulating products manufactured in California. (See *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 588; *Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372, 389; *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 313.) While Australia has an interest in applying its law to injuries from products occurring within its borders, that interest would not be impaired by application of California law. Australia would have little interest in prohibiting a complete remedy for injury to its own citizens, whereas "when the defendant is a resident of California and the tortious conduct giving rise to the wrongful death action occurs *here,* California's deterrent policy of full compensation is clearly advanced by application of its own law." (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d 574, 584, italics added.) Under these circumstances, California law would be applicable if trial were held here, and the analysis of our "governmental interest" in the case argues in favor of a California forum.

*V. Respondent's Relationship to California*

Several related factors also favor trial in California. In the case of a corporate defendant, if either the corporation's place of incorporation

or principal place of business is in California, this fact weighs against a forum non conveniens dismissal. (*Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372, 387; *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 580; *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 311.) ■ Here, the sole named defendant is a California corporation with its principal place of business in California.

Further, respondent has a relationship to this state which imposes upon it "an obligation to participate in judicial proceedings in the courts of this state." (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 114.) ■ "[I]t has been held that the mere fact of a defendant's incorporation in the forum state, in itself, does not give that state any real connection with the controversy so as to require that court to retain jurisdiction." (*Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 311.) However, where a corporation is actually carrying on business in the state and plaintiffs make an offer of proof concerning defendant's in-state activities which supports the allegation that the tortious conduct occurred in California, the corporate connection with the state is more than tenuous and weighs against dismissal. (See *Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372, 388.)

■ In *Holmes,* plaintiffs offered factual support that the tortious acts were committed not by the foreign affiliate-intermediary, but by the resident defendant. In our own case, appellants presented the trial court with ample facts as to respondent's manufacture, sale and distribution of its product weighing even more strongly in favor of the requisite connection with California and against dismissal or stay. (See *Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d at p. 388.)

Yet another related factor is whether an action brought in this state would impose a burden "which is unfair, inequitable or disproportionate in view of the relationship of the parties or of the cause of action to this state." (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 113-114.) "Every lawsuit tried places a burden upon the courts, but at least one of the functions of courts is to try lawsuits." (*Brown* v. *Clorox Co., supra,* 56 Cal.App.3d at p. 313.)

In *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 586-587, the court analyzed the competing governmental interests in holding trial in the alternative forums, and the propriety of burdening the courts in either forum; stating that the "factual underpinning" of the case should be examined. Although the trial court "does not make a factual finding which is determinative on any issue at trial, it must evaluate the respective involvement

of the various defendants in order to weigh the various factors necessary for the exercise of its discretion." In that case, only a nominal connection between the one in-state defendant and the accident was found. (*Id.*, at p. 587.)

Here, respondent is not one of numerous named defendants located in this state and abroad, but is the sole named focus of the complaint. The declarations, correspondence and other evidence clearly connect respondent's in-state activities with the subject of the action. In *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d at page 313, the court found that the relationship of the corporation to California, and its activities in manufacturing, processing, packaging, labeling, distributing and selling products in California and sending products from this state to other states "does not lead to a conclusion that prosecution of this action in this state would 'place a burden on the courts of this state which is unfair, inequitable or disproportionate,'" and the same is true in the instant case.

*VI. Substantial Disadvantage to Any Party and Avoidance of Multiple Actions*

Two additional factors remain to be considered. The first is "[t]he extent to which any party will be substantially disadvantaged by a trial in California as contrasted with trial in the forum suggested by the moving party," and the second is "[t]he avoidance of multiplicity of actions and inconsistent adjudication." (*Jagger* v. *Superior Court, supra,* 96 Cal.App.3d 579, 585-586; accord *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d 105, 113-114.)

In *Holmes* v. *Syntex Laboratories, Inc., supra,* 136 Cal.App.3d 372, 386-387, the court discussed the substantial disadvantage to plaintiffs if they were required to proceed under British law, which does not recognize strict liability. The court concluded that Britain was not a "suitable" alternative forum.

Since the case at bench is also a products liability action, disadvantage to appellants' theory of the action is manifest in removal to a forum which does not entertain similar substantive products law. Although the case cannot turn on this disadvantage in different substantive law, we may permissibly consider it. However, unlike *Holmes,* this is not a case in which the manufacturer had complete control over a product reaching the ultimate consumer unchanged. In our case the device was subjected to certain sterilization procedures and then implanted by means of a sophisticated surgical procedure, all performed in the alternative forum. The presence and possible

contribution of these intermediaries to the eventual failure of the prosthesis cannot be ignored.

Thus, while there is under the *Holmes* substantive law analysis approach, a substantial disadvantage to plaintiff if the trial is convened in the alternative forum, there is also a substantial disadvantage to defendant in the fact that other potential tortfeasors and witnesses are located in the alternative forum and may not be amenable to jurisdiction here.

Although we note this disadvantage to respondent, we do not find that it weighs so heavily in favor of respondent as to counterbalance the factors in favor of trial in this state. The doctors, hospital, and hospital personnel were not named in the action brought by appellants. Respondents thus have no outstanding cross-complaint, and have not taken steps to join any of these parties either here or in Australia. Further, in answering the complaint, respondent did not make any allegations suggestive of third party negligence or liability.

More importantly, a review of the facts presented thus far does not point to exclusive or even substantial third party liability. In *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 587-588, the trial court upon review of the facts found only a nominal connection between the in-state defendants and the out-of-state accident and thus the principle of equitable apportionment of liability favored trial elsewhere. There, the predominant liability for the accident appeared to be with several other defendants. In the case at bench, the evidence thus far offered simply does not support a conclusion that third party negligence is a predominant or substantial issue.

Finally, it is inappropriate to shift the forum based upon the fact that respondent *may* join others when it has not taken any steps to do so. The interests and asserted rights implicit in an actual cause of action should not be made subservient to a *potential* cause or causes of action, when the factual basis for such a potential claim is less than obvious. The avoidance of multiple actions is not a dominant consideration here.

When we compare the many factors weighing in favor of trial in this state against those in favor of the Australian forum, we find that the scale is tipped heavily in favor of California and that substantial evidence does not support the trial court's order. The fact that the action was stayed and not dismissed neither changes the balance in favor of this forum nor enhances the appropriateness of the alternative forum. Under these circumstances, we find the trial court abused its discretion in staying the action and reverse the stay order.

## Disposition

The trial court's order staying proceedings is reversed.

McClosky, Acting P. J., and Recana, J.,* concurred.

A petition for a rehearing was denied June 26, 1986, and respondent's petition for review by the Supreme Court was denied August 20, 1986.

---

*Assigned by the Chairperson of the Judicial Council.