[No. B027695. Second Dist., Div. Three. July 22, 1988.]

CREDIT LYONNAIS BANK NEDERLAND, N.V., Plaintiff and Appellant, v.
MANATT, PHELPS, ROTHENBERG & TUNNEY et al., Defendants, Cross-complainants and Appellants;
ANTHONY F. L. AMHURST et al., Defendants, Cross-defendants and Respondents.

## COUNSEL

Loeb & Loeb, Robin Meadow, Alan W. Wilken and Megan Scott-Kakures for Plaintiff and Appellant.

Bushkin, Gaims, Gaines & Jonas, Armato, Gaims, Weil, West & Epstein, Alan Jay Weil and Amy L. Rice for Defendants, Cross-complainants and Appellants.

O'Melveny & Myers, Ralph W. Dau and John A. Crose, Jr., for Defendants, Cross-defendants and Respondents.

## OPINION

**CROSKEY, J.**—The plaintiff Credit Lyonnais Bank Nederland N.V., a Netherlands bank (Bank), filed this legal malpractice action in California and appeals from an order granting the motion of the defendants, Anthony F.L. Amhurst, an English lawyer and his London law firm Amhurst, Brown, Martin & Nicholson (collectively Amhurst) for a dismissal of the action as to them on the ground of forum non conveniens. The bank is joined in the appeal by the defendants and cross-complainants Manatt, Phelps, Rothenberg & Tunney and one of its partners, William S. Brunsten (collectively Manatt) who, after they were named and served in this action, filed a cross-complaint against Amhurst for indemnification. We conclude, after a careful consideration of the record, that the trial court did not abuse its discretion in granting the motion and we therefore affirm.

## FACTUAL BACKGROUND

In January 1981, Bank, through its London office, loaned approximately $1,450,000 to Camargue Finance, Ltd., a British limited liability company (Borrower). The loan was to be used by a California sub-subsidiary of Borrower (Parador Sacramento, Inc.) in connection with a proposed purchase of the Woodlake Inn Motel in Sacramento County. As a consideration for the loan, Bank required Borrower to provide, as security, the written personal guarantees from its principals, Nathaniel Meek and Jeffrey Roseman (who are now both apparently residents of Manchester, England), and from a related entity, Finexport Societe De Financement Et D'Exportation S.A.[1] In addition, Bank required deeds of trust and personal property security interests in the Woodlake Inn and the Anaheim Park Motor Hotel, a California property which Parador Properties, Inc.,[2] had acquired through a prior bank loan.[3]

In January 1981, the London office of Bank delivered written instructions to Amhurst requesting that the firm act for Bank in obtaining the personal quaranty of Roseman and the deeds of trust and personal property security interests on the two commercial properties. Because of the fact that such security was located in California, Amhurst sent the following telex to Manatt in February 1981: "Please act as our agents on behalf of Slavenbury [*sic*] Bank[4] in respect of the perfecting of the third party security arrangements in respect of which matters, you may accept this letter as our undertaking to be responsible for your proper charges . . . ."

Manatt agreed and, on February 26, 1981, sent Amhurst a telex stating, "Although we will be assisting your firm in its representation of the Bank and tendering our bills to your firm, it is our understanding that for purposes of determining conflicts of interest and related matters, the bank, and not [Amhurst], is the client of our firm . . . . [W]ith regard to the fees for our legal services, your firm will guaranty the payment of bills to the bank . . . ." Over the next two years Manatt rendered legal services in California.

Amhurst sent Manatt and Rosenfeld[5] the forms of security documents to be used and Amhurst instructed both law firms on actions to be taken.

---

[1] Borrower was also required to arrange a deposit by Finexport with the Bank of $1 million.

[2] Both Parador Sacramento, Inc. and Parador Properties, Inc. are California sub-subsidiaries of Borrower.

[3] The combined loans brought Borrower's indebtedness to the Bank to approximately $1,950,000 which was to be secured by the California properties.

[4] Bank was formerly known as Slavenbery's Bank.

[5] The Beverly Hills, California firm of Rosenfeld, Meyer and Susman (Rosenfeld) represented the Parador companies and Roseman in this transaction.

During this period of time, Amhurst corresponded frequently with Manatt as well as with Rosenfeld, and guarantor Roseman, who at the time was residing in California. All of the communications between Bank and Manatt were by letter or telex and by telephone calls Amhurst placed or received in London.

Manatt argues that the legal work which it performed involved advising Amhurst with respect to obtaining the security interests, advising Amhurst of the issues involved in enforcing those security interests and in proceeding against Borrower and the guarantors of the loan in California in the event of default and, if advised to do so, recording and perfecting those security interests. According to Manatt, all of the instructions, advice, documentation and information in connection with securing Bank's loan were received from Amhurst and not from Bank.

In 1983, the Parador companies went into bankruptcy and Bank learned for the first time that the security interests in California had not been recorded or perfected. This law suit followed. Bank also filed separate actions in England against Borrower, the two guarantors on the indebtedness, and Amhurst.[6]

## PROCEDURAL BACKGROUND

The Bank filed this action for legal malpractice and declaratory relief against Manatt alleging negligence in failing to perfect security interests in real and personal property securing loans totalling approximately $1,950,000.

Manatt filed a cross-complaint against Amhurst for declaratory relief regarding indemnity and breach of fiduciary duty. Manatt alleged that Amhurst failed (1) to follow Manatt's advice, (2) to provide Manatt with "all necessary instructions, information, documentation, funds and other assistance" to perform the necessary requested legal services and (3) to perform adequately and timely the legal services requested by Manatt and further alleged that as a result, Manatt was prevented from recording and perfecting the necessary security interests.

The Bank then amended its complaint to name Amhurst as Does I and II. Amhurst moved to quash service of both actions for lack of personal jurisdiction or, in the alternative, for dismissal as to Amhurst on the ground of forum non conveniens.

---

[6] Bank's counsel has advised us that Bank filed the English action against Amhurst in 1987; apparently to avoid a dismissal under English law the Bank caused the complaint to be served upon Amhurst around the end of May 1988.

After a hearing the trial court granted Amhurst's forum non conveniens motion, dismissing Bank's complaint and Manatt's cross-complaint and stating, the "court is satisfied that California is an inconvenient forum for the trial of the complaint, as to these defendants, and the cross-complaint, and in the interest of substantial justice the action encompassed by those pleadings should be tried in the proper court in England . . . ."

### CONTENTIONS OF THE PARTIES

Bank appeals contending (1) that the court had no discretion to dismiss Amhurst "because of California's strong policy of providing a forum to its residents" and (2) that to the extent the motion involved discretion, "the trial court abused that discretion by failing to accord proper weight to the factors favoring California as the proper forum."

Manatt also appeals, contending that the trial court had no discretion to dismiss the action against Amhurst and arguing (1) that actions brought by California residents may not be dismissed on forum non conveniens grounds except in the "extraordinary" case where California is not an "adequate" forum and (2) that even if a balancing test was permitted, a balancing in this case "demonstrates that California is the most convenient and fair forum."

Both Bank and Manatt assert that the court's order[7] "necessarily implies a finding that the court had jurisdiction over Amhurst, because without a finding of jurisdiction the court could not properly reach the forum non conveniens issue."

Amhurst did not appeal from the trial court's "implied" finding of jurisdiction but, in response to the arguments of Bank and Manatt, contends that the court, by not signing the proposed order denying dismissal for lack of personal jurisdiction or the purposed order granting dismissal on that ground, "clearly refused to rule either way on personal jurisdiction"; and that "no finding may be implied from this refusal to decide the point." **(1)** (See fn. 8.) In addition, Amhurst argues (1) that Code of Civil Procedure section 418.10 "eliminates any presumption or waiver of jurisdiction attendant upon the inconvenient forum motion" and (2) that the court "lacked power to exercise personal jurisdiction over the English solicitors."[8]

---

[7] The trial court declined to make a specific ruling on the issue of personal jurisdiction.

[8] In view of our conclusion with respect to the trial court's order of dismissal on the ground of forum non conveniens, we do not specifically reach the jurisdictional argument raised by Amhurst. However, we note in passing that by holding that California was an inconvenient forum, the trial court necessarily implied that California did in fact have jurisdiction over Amhurst. The motion to dismiss on the ground of forum non conveniens is inconsistent with and necessarily phrased in the alternative to a motion to quash service for lack of jurisdiction.

## DISCUSSION

■ The doctrine of forum non conveniens allows a court to decline to exercise jurisdiction where it finds that it is more appropriate and equitable to try the action elsewhere. *(Hemmelgarn* v. *Boeing Co.* (1980) 106 Cal.App.3d 576, 583 [165 Cal.Rptr. 190]; *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 109 [90 Cal.Rptr. 461].) This doctrine is codified in Code of Civil Procedure section 410.30, subdivision (a) which provides, in part: ". . . when a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

Whether the doctrine should be applied in a particular case, however, rests within the discretion of the trial court whose decision will be disturbed upon appeal only when the order is unsupported by substantial evidence under apposite law. *(Corrigan* v. *Bjork Shiley Corp., supra,* 182 Cal.App.3d 166; *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at p. 584; *Dendy* v. *MGM Grand Hotels, Inc.* (1982) 137 Cal.App.3d 457, 460 [187 Cal.Rptr. 95].) " 'An order granting such a motion will not be overturned on appeal unless the balance of factors weigh strongly against the moving party . . . .' " *(Celotex Corp.* v. *American Ins. Co.* (1987) 199 Cal.App.3d 678, 682 [245 Cal.Rptr. 429].)

1. *There Has Been a Statutory Modification to the Policy of Denying Stays or Dismissals on the Ground of Inconvenient Forum Where the Plaintiff Is a California Resident.*

In 1986, the Legislature added the following sentence to the portion of Code of Civil Procedure section 410.30 quoted above (see Stats. 1986, ch. 968, § 4, urgency eff. Sept. 22, 1986): "The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action." Before this amendment, the courts had held that where the plaintiff is a resident of the forum state the trial court had no

This is because the court, in dismissing a suit on grounds of forum non conveniens, relinquishes jurisdiction it already has over the action whereas the court, in quashing service, determines that it never had jurisdiction over the parties and the cause. (See *Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 857-858 [187 Cal.Rptr. 95].) Once jurisdiction is established the court, in its discretion, can stay or dismiss an action if it finds that "in the interest of substantial justice" the case should be heard in another forum. The doctrine of forum non conveniens is not jurisdictional; the argument of inconvenient forum concedes jurisdiction for it asks the court to decline to exercise the jurisdiction it constitutionally already has. (Code Civ. Proc., § 410.30, subd. (a); *Corrigan* v. *Bjork Shiley Corp.* (1986) 182 Cal.App.3d 166, 173 [227 Cal.Rptr. 247]; see also *Berard Construction Co.* v. *Municipal Court* (1975) 49 Cal.App.3d 710, 715 [122 Cal.Rptr. 825].)

discretion to dismiss the action on grounds of forum non conveniens except in extraordinary cases (see *Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 859 [126 Cal.Rptr. 811, 544 P.2d 947]); that a "determination that a plaintiff is domiciled here would ordinarily preclude granting the defendant's motion for dismissal on the ground of forum non conveniens." (*Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481, 485 [47 Cal.Rptr. 201, 407 P.2d 1].)[9]

■ Amhurst contends that the 1986 amendment "abolished the rigid *Goodwine* rule" and that the amendment now permits the court to exercise its discretion to dismiss actions, on inconvenient forum grounds, even though they may involve a California plaintiff.[10]

Manatt, claiming (as a cross-complainant) the status of a plaintiff, argues that this amendment should not be so broadly construed; that it was designed to further limit the inconvenient forum doctrine by allowing parties to large contracts to designate California law, even where the subject transaction bears no relationship to the forum; that aside from the new "large contracts" provisions, application of the inconvenient doctrine remains the same. Bank also argues that this amendment applies only to "contract actions," not tort actions.[11]

We disagree with both arguments. In our view, the history and context of the amendment confirm a legislative intent to broaden, rather than limit, inconvenient forum stays or dismissals in noncontract cases. While it is true that the Legislature limited which contract actions were to be covered by the act, it did not exclude noncontract actions from the amendment to section 410.30. Further, and more to the point at issue here, the language of section 410.30, subdivision (a) (which expands the use of the inconvenient forum doctrine) is expressly *not applicable* to those contract actions covered by section 410.40 (see Code Civ. Proc., § 410.30, subd. (b)).

[9] *Before* the 1986 amendment, the Judicial Council comment to section 410.30 stated that two factors were "most important": First, that " 'since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons . . . .' [Citations.] The second is that 'the action will not be dismissed unless a suitable alternative forum is available to the plaintiff . . . .' [Citation.]" (*Holmes* v. *Syntex Laboratories, Inc.,* (1984) 156 Cal.App.3d 372, 379.)

[10] In the recent case of *Klein* v. *Superior Court* (1988) 197 Cal.App.3d 1217, 1223 [243 Cal.Rptr. 352], the court, without deciding whether the amendment changes the above cited "deeply rooted policy," stated that ". . . a fair interpretation of the amendment is that the Legislature intended that future decisions assign less weight than hitherto to the factor of the plaintiff's local residence."

[11] This argument is apparently based on the portion of the bill which stated, "This act applies to *contracts* entered into on or after its effective date, and also applies to *contracts* entered into prior to its effective date with respect to any action or proceeding commenced on or after the effective date of this act." (Stats. 1986, ch. 968, § 8.) (Italics added.)

The 1986 enactment amending section 410.30 also added Civil Code section 1646.5[12] and Code of Civil Procedure section 410.40.[13] It is these two additions which are directed specifically to certain types of contractual disputes. ■■ ■■ ■■ They are designed (1) to allow parties to transactions having no particular relationship to this state to provide, with only certain restrictions, that California law will govern the transaction provided it involves at least $250,000 (Civ. Code, § 1646.5) and (2) to maintain an action in this state against a foreign corporation or nonresident person where the transaction involves not less than $1 million and the foreign corporation or nonresident agrees by contract to submit to jurisdiction of the courts of this state. (Code Civ. Proc., § 410.40.)[14] While

---

[12] Civil Code section 1646.5 provides: "Notwithstanding Section 1646, the parties to any contract, agreement, or undertaking, contingent or otherwise, relating to a transaction involving in the aggregate not less than two hundred fifty thousand dollars ($250,000), including a transaction otherwise covered by subdivision (1) of Section 1105 of the Commercial Code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not the contract, agreement, or undertaking or transaction bears a reasonable relation to this state. This section does not apply to any contract, agreement, or undertaking (a) for labor or personal services, (b) relating to any transaction primarily for personal, family, or household purposes, or (c) to the extent provided to the contrary in subdivision (2) of Section 1105 of the Commercial Code.

"Nothing in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any contract, agreement, or undertaking to which this section does not apply.

"This section remain in effect only until January 1, 1992, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1992, deletes or extends that date."

[13] Code of Civil Procedure section 410.40 provides: "Any person may maintain an action or proceeding in a court of this state against a foreign corporation or nonresident person where the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of California law has been made in whole or in part by the parties thereto and which (a) is a contract, agreement, or undertaking, contingent or otherwise, relating to a transaction involving in the aggregate not less than one million dollars ($1,000,000), and (b) contains a provision or provisions under which the foreign corporation or nonresident agrees to submit to the jurisdiction of the courts of this state.

"Nothing in this section shall be construed to limit or deny the enforcement of any provision respecting choice of forum in any other contract, agreement, or undertaking to which this section does not apply.

"This section shall remain in effect only until January 1, 1992, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1992, deletes or extends that date."

[14] The Legislative purpose behind this bill was "to promote California as an international commercial arbitration center" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3223 (1985-1986 Reg. Sess.) as amended Mar. 31, 1986) by ensuring "the effectiveness of California choice of law clauses in large commercial contracts" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3223 (1985-1986 Reg. Sess.) as amended Mar. 31, 1986). The sponsor felt this bill would enable "foreign businesses entering a commercial contract to designate California and the laws of California, a neutral forum, to govern any contract disputes that arise." (Sen. Rules Com., 3d reading, Analysis of Assem. Bill No. 3223 (1985-1986 Reg. Sess.) The bill would exempt court actions "arising from such contracts, agreements or

the provisions of these two new sections are primarily relevant to particular types of contracts, they are nonetheless helpful in analyzing the legislative history of the entire bill.

According to the California Senate Committee on Judiciary Analysis of Assembly Bill No. 3223 (1985-1986 Reg. Sess.) as amended March 31, 1986, the portion of the bill which adopted the large contract provisions was ". . . modeled after a similar statute enacted in New York in 1984 for the purpose of fostering New York as an international commercial arbitration center." Likewise, it was felt that this legislation would be a ". . . major step in the development of Los Angeles and San Francisco as leading international trade centers. These cities could then compete to handle dispute arbitration business which is currently handled in London, Paris, Vancouver, or Singapore." (*Ibid.*)

However, and most significantly, the provision which was in the portion of the bill amending section 410.30 had already been added to New York Civil Practice Rule 327 in 1972,[15] long before New York's 1984 adoption of that part of the statute dealing with the large contract provisions. The fact that both concepts were enacted in California in the same bill is of no particular significance to the specific issue before us. Civil Code section 1646.5 and Code of Civil Procedure section 410.40 limit the exercise of the inconvenient forum doctrine while the amendment to Code of Civil Procedure section 410.30 expands it.

We conclude that by the amendment to section 410.30, the Legislature intended that courts should thereafter assign less weight to the factor of plaintiff's California residence in those cases to which that section applies. (*Klein* v. *Superior Court, supra,* 197 Cal.App.3d at p. 1223.) To put it another way, as the New York courts have held, the "application [of forum non conveniens] should turn on consideration of justice, fairness and convenience and not solely on the residence of one of the parties." (*Silver* v. *Great American Insurance Company* (1972) 29 N.Y.2d 356 [278 N.E.2d 619, 622].) We thus feel free to review this record without giving special emphasis to the fact that Manatt is a California resident.[16]

---

undertakings from provisions of law which authorize the court to stay or dismiss actions on the basis that the interests of substantial justice require the action to be heard in an out-of-state forum." (*Ibid.*)

[15] New York Civil Practice Rule 327 states in pertinent part: ". . . the domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."

[16] Another reason for concluding that dispositive weight cannot be given to Manatt's California residence, is the fact that Manatt is only one of the defendants here. The other defendant, along with the plaintiff, is a resident of England. In discussing the rule that the court cannot dismiss or stay a proceeding on the ground of forum non conveniens where both

## 2. *A Consideration of All of the Relevant Factors Reflects That Substantial Evidence Supports the Trial Court's Ruling.*

■ Amhurst's motion is properly determined by an examination of all of the factors which have been judicially recognized as relevant. California courts have identified as many as 25 such factors.[17] (*Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d 372, 378-379; *Great Northern Ry. Co.* v. *Superior Court, supra* 12 Cal.App.3d 105, 113-115; see also, *Celotex Corp.* v. *American Ins. Co., supra,* 199 Cal.App.3d 678, 683; *Corrigan* v. *Bjork Shiley Corp., supra,* 182 Cal.App.3d 166, 174, fn. 2.) Although the factors that the court may consider are numerous, "basically the court looks to the relative convenience and fairness to the parties and witnesses in favoring one forum over another, which forum will best serve the interests

parties to an action were California residents, the court, in *Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d 457, 461, stated that application of such a rule "to multiparty, multiaction litigation arising out of a single occurrence would undermine the policy underlying the doctrine of forum non conveniens since considerations of equity and convenience would be overcome by a limited and rigid rule." In those situations where not all the defendants are California residents, the court should not rely on such a hard and fast rule but should take into consideration all of the factors which legitimately influence the relative convenience of alternate forums. Thus, quite apart from the impact of the 1986 amendment, the policy favoring a plaintiff's choice of forum would not be dispositive since that choice had been made here by an English plaintiff in a multi-defendant case where the moving defendant is also an English resident. (See *Corrigan* v. *Bjork Shiley Corp., supra,* 182 Cal.App.3d at p. 176.)

[17] In addition to plaintiffs' choice of forum which, in our view, is no longer entitled to the previously recognized special weight, the relevant ". . . [factors] include the amenability of the parties to personal jurisdiction in this state and in the alternative forum; the relative convenience to the parties and trial witnesses of the competing forums; the differences in the conflict of law rules applicable in the competing forums; the selection of a convenient, reasonable and fair place of trial; defendant's principal place of business; the extent to which the cause of action arose out of events related to this state; the extent to which any party will be substantially disadvantaged by a trial in either forum; the relative enforceability of judgments rendered in this state or the alternative forum; the relative inconvenience to witnesses and relative expense to parties of proceeding in this state or the alternative forum; the significance and necessity of a view by the trier of fact of physical evidence not conveniently movable from the alternative forum; the extent to which prosecution of the action in this state would place a burden upon this state's judicial resources equitably disproportionate to the relationship of the parties or cause of action to this state; the extent to which the relationship of the moving party to this state obligates him to participate in judicial proceedings here; this state's interest in providing a forum for some or all of the parties; this state's public interest in the litigation; the avoidance of multiplicity of actions and inconsistent adjudications; the relative ease of access to sources of proof; the availability of compulsory process for attendance of witnesses; the relative advantages and obstacles to a fair trial; the burden upon jurors, local court and taxpayers of a jurisdiction having a minimal relation to the subject of the litigation; the difficulties and inconveniences to defendant, the court and jurors incident to the presentation of evidence by deposition; and the availability of the suggested forum. [Citation.] [¶] A court may not consider, however, the probability, if such exists, that a California jury may be more generous in its award than the proper forum. [Citation.]" (*Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 584-585.)

of judicial efficiency, which forum is most able to obtain jurisdiction over parties and compel witnesses to testify, and the relative interest of each state in adjudicating the issue. [Citations.]" (*Dendy* v. *MGM Grand Hotel, Inc., supra,* 137 Cal.App.3d 457, 461-462.)

"In making its determination [to stay or dismiss], the court may take into account '. . . any consideration which legitimately bears upon the relative suitability or convenience of the alternative forums.' [Citation.]" (*Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d at p. 461.) In the present case the trial court found "that California is an inconvenient forum for the trial of the complaint, as to these defendants [Amhurst], and the cross-complaint, and in the interest of substantial justice the action encompassed by those pleadings should be tried in the proper court in England."

█ The act of staying or dismissing an action upon the ground of forum non conveniens is an act of discretion which "may not be arbitrary; it must be exercised in conformity with the spirit of the law and in a manner to subserve and not impede the ends of substantial justice. [Citation.]" (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d 105, 110.) It is regarded as a " 'drastic remedy to be exercised . . . with caution and restraint.' [Citation.]" (*Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 580.) Where the court has abused its discretion, the stay or dismissal must be lifted. (*Brown* v. *Clorox Co.* (1976) 56 Cal.App.3d 306, 313-314 [128 Cal.Rptr. 385].) However, the discretion of the trial court should be disturbed on appeal only when the order is unsupported by substantial evidence. (*Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d 457, 460.)

█ It appears here that the trial court's order is supported by substantial evidence. Our review of the record supports the conclusion that a majority of the relevant factors favor the granting of the motion. The evidence presented to the trial court shows that Bank is presently suing Borrower and the guarantors, Roseman and Meek, in England; and the claims against Amhurst could be brought to trial in England in approximately 18 months and at relatively nominal cost, i.e., 7,000-10,000 pounds Sterling (approximately $11,000 to $17,000) for each party, excluding the cost of retaining experts. Five of the six principal witnesses are residents of England (Anthony F. L. Amhurst, the two Bank employees with whom communications were made and the two principals of Borrower, Jeffrey Roseman & Nathaniel Meek); the documents of Roseman and Meek as well as of Bank and Amhurst are in England and subpoena power exists in England to compel the appearance of these witnesses and the production of documents. While it is true that the transaction involved security interests

in California, the land is not the subject of this dispute and the situs of the property is not relevant to the outcome of the case.

Amhurst would definitely be "sustantially disadvantaged" by having to defend in California since most of the evidence, documents and witnesses needed for a proper defense are in England. Bank's London branch, Borrower and the Guarantors are all located in England. Bank, through its London branch employees, controlled the underlying loan transaction by instructions to Amhurst. Bank's employees and the availability of Bank's original documents, which are in England, are crucial to Amhurst's defense. These witnesses could not be compelled to attend trial in California and Amhurst would have to rely on deposition testimony. (Code Civ. Proc., § 1989.)

Finally, if the question of Amhurst's alleged legal malpractice is to be resolved, that issue should be judged by English standards and practice, not by those of California. Amhurst, in England, will be held to the standard of practice applicable to English solicitors acting in similar situations. California has no interest in regulating Amhurst's conduct yet England's interest is paramount. While the general law of professional negligence may be the same in England and California, the standards within the two legal communities could well be different, thus leading to serious jury confusion. Moreover, it would be an unfair burden to impose on Amhurst to have a California jury, instead of an English judge, decide the issue of Amhurst's professional competence. (See *Wright* v. *Williams* (1975) 47 Cal.App.3d 802, 807-808 [121 Cal.Rptr. 194].)

Bank would suffer no inconvenience or injustice at all from a trial in England. Its London branch initiated and controlled the entire transaction from which this litigation has arisen. Bank is only in a California court at all because that is the only forum where jurisdiction over Manatt can be obtained. However, that fact does not justify compelling Amhurst to come to California to defend itself for alleged acts or omissions which took place in England. That Bank may have to prosecute separate professional negligence actions is simply the logical consequence of its own decision to retain both English and California counsel. Indeed, it appears that Bank has already filed and served just such a separate action against Amhurst in England. (See fn. 6, *ante*.)

Manatt demonstrates no stronger a case for compelling Amhurst's California participation. Manatt does not need to have Amhurst in the case in order to present a defense based on Amhurst's alleged acts or omissions. Manatt may rely on the doctrine of comparative negligence whether or not Amhurst is a party to this action. Bank retained Amhurst and, in all of

Amhurst's dealings with Manatt, Amhurst apparently acted as the agent of Bank. The negligence of Amhurst, if any, would therefore be attributable to Bank.

Further, Manatt's cross-claim is for indemnification and its damages, if any, have yet to be ascertained. It may be that Manatt will suffer no damages at all. If Manatt is found liable to Bank for malpractice then it will be free to seek indemnification against Amhurst in the English courts. Contrary to Manatt's argument, it is not unfair to require Manatt to pursue indemnification rights in England. While this may be a burden it is also one that is a logical consequence of a voluntary act. Manatt willingly accepted the legal employment offered by Amhurst to provide assistance in documenting and closing what was essentially an English financial transaction. Moreover, the possibility that Amhurst might prevail in an action brought by Manatt in England, even after a Manatt loss in California on the Bank's negligence claim, would not necessarily be an inconsistent result. It is conceivable that Manatt is solely responsible for the Bank's loss of its California security.

## DISPOSITION

After a consideration of all of the factors involved we are satisfied that the trial court did not abuse its discretion in applying the doctrine of forum non conveniens. The order is therefore affirmed. Amhurst shall recover its costs on appeal.

Danielson, Acting P. J., and Arabian, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied October 27, 1988. Mosk, J., did not participate therein.