[Civ. No. 18869. Fourth Dist., Div. One. June 5, 1980.]

JACQUELINE LORRAINE HEMMELGARN, as Executrix, etc., et al., Plaintiffs and Appellants, v. BOEING COMPANY et al., Defendants and Respondents.

STUART MISKOW, as Executor, etc., Plaintiff and Appellant, v. BOEING COMPANY et al., Defendants and Respondents.

MARIA GUILIA GIURIATO, et al., Plaintiffs and Appellants, v. BOEING COMPANY et al., Defendants and Respondents.

**COUNSEL**

Sterns, Bostwick & Tehin, John C. Elstead and Gerald C. Sterns for Plaintiffs and Appellants.

Perkins, Coie, Stone, Olsen & Williams, Keith Gerrard, Thomas J. McLaughlin, John D. Dillon, Rudi M. Brewster, Gray, Cary, Ames & Frye, Gibson, Dunn & Crutcher, Robert Forgnone and Gregory G. Hollows for Defendants and Respondents.

**OPINION**

**WIENER, J.**—■  The doctrine of inconvenient forum which permits an action to be removed to another state or country for trial is "by its nature a drastic remedy to be exercised . . . with caution and restraint." (*Bechtel Corp.* v. *Industrial Indem. Co.* (1978) 86 Cal.App.3d 45, 49 [150 Cal.Rptr. 29].) ■  Where the plaintiff is a resident of this state and decides to sue here the trial court cannot dismiss the action. (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 859 [126 Cal.Rptr. 811, 544 P.2d 947].) ■  Even where the plaintiff is out of state, but willing to shoulder the burden of inconvenience and additional expense of litigation in California, the motion to dismiss should be denied if plaintiff claims defendants are companies incorporated in California, maintain their principal place of business here, and conduct themselves here so as to cause injuries to others in another state. (*Brown* v. *Clorox Co.* (1976) 56 Cal.App.3d 306, 313 [128 Cal.Rptr. 385].) ■  Even

where all parties to a cross-complaint are nonresidents of this state, the motion to dismiss may be properly denied if it serves California's public interest to retain the case. (See *International Harvester Co. v. Superior Court* (1979) 95 Cal.App.3d 652 [157 Cal.Rptr. 324] [California's policy of apportionment of damages among defendants according to their respective fault justified California retaining jurisdiction over a cross-complaint for indemnity after the principal case was settled and dismissed].)

It is within this framework we review the appeal from judgments entered after the trial court conditionally granted defendants' motions to dismiss on the grounds of inconvenient forum. (Code Civ. Proc., § 410.30.) The order for dismissal was conditioned on defendants, Rohr Industries, Inc. (Rohr) and the Boeing Company (Boeing) submitting to the jurisdiction of the British Columbia courts. We conclude under the circumstances of these wrongful death actions brought on behalf of Canadian decedents arising from an airplane crash which occurred in Canada where only a single defendant, Rohr, is a California resident and all other defendants who are potentially liable for damages are residents of either Canada or the State of Washington, that plaintiffs' choice of forum must be subordinated to the cumulative weight of other important considerations bearing upon the trial court's exercise of discretion. These factors include, but are not limited to, the furtherance of California's interest in assuring to one of its residents, Rohr, in a single proceeding in Canada in which all defendants are before the court the complete apportionment of damages among those responsible for the accident. We affirm the judgments.

*Factual and Procedural Background*

On February 11, 1978, 43 people were killed in the crash of a Boeing 737, Pacific Western Airlines' (PWA) flight 314, at the Cranbrook Airport in British Columbia, Canada. Wrongful death actions arising from that tragic accident are now on file in Canada and in both federal and state courts in California.[1]

---

[1]After the dismissal of plaintiffs' actions, they joined others similarly situated and filed suits against Boeing, Rohr and McDonald-Douglas in the United States District Court for the Central District of California. These cases were also dismissed on defendants' motions on the ground of forum non conveniens, upon condition that defendants submit to the jurisdiction of British Columbia. (*Orr v. The Boeing Company*, No. CV79-526 C.D.Cal., Apr. 25, 1979.) Their appeal in the Ninth Circuit is now pending. In the state system there are six related cases now on file in the San Diego Superior

This appeal involves three such actions filed in the Superior Court for San Diego County in which Boeing, Rohr and PWA are named as defendants. PWA was never served. Each plaintiff alleges that Boeing and Rohr are liable because of the negligent and defective design, instruction and warning regarding the thrust reverser and associated systems of the aircraft.

Flight 314 was to go from Calgary, Alberta, to British Columbia, Canada. At 12:33 p.m., Calgary Air Traffic Control called Cranbrook Aeradio and advised the plane's estimated time for arrival (E.T.A.) at Cranbrook Airport was 1:05 p.m. Cranbrook time. Both of these communication centers are operated by employees of Transport Canada, a Canadian federal government cabinet-level department headed by the Minister of Transport. The E.T.A. was radioed to a snow sweeper which was clearing the snow from the Cranbrook runway. As a matter of routine procedure, the snow sweeper was to vacate the runway several minutes before the landing. At 12:47 p.m., Cranbrook Aeradio told flight 314 it was snowing and snow removal equipment was on the runway. At approximately 12:55 p.m.—10 minutes ahead of schedule—without further communication, the aircraft started its final approach. After it touched down and traveled a short distance, the pilot apparently saw the snow sweeper. In order to avoid a collision he attempted to execute an immediate "go-around" and land again. The aircraft ultimately attained an altitude in excess of 200 feet, banked sharply to the left and crashed near the end of the runway. Investigation revealed that during the landing the engine power levers were in reverse thrust to assist in braking the plane. Thereafter, to accomplish the "go-around" maneuver a forward thrust power setting was selected.

A coroner's inquest was convened in accordance with British Columbia law to determine the cause of the crash. After six days of testimony and evidence, the coroner's jury concluded the contributing causal factors were inadequate communication and the pilot's decision to abort the landing.

---

Court. These cases are currently stayed pending this appeal. There are similar actions on behalf of other plaintiffs on file in the Superior Court for Los Angeles County. In addition, four of the five plaintiffs in this appeal have filed suit in British Columbia against PWA, Boeing, Rohr, the government of Canada and the City of Cranbrook. Including the actions filed by plaintiffs, there are at least 26 other actions arising out of the accident pending in Canada.

The jury found Calgary Air Traffic failed to calculate a reasonably accurate E.T.A., the fight crew did not effectively communicate an accurate E.T.A. to Cranbrook Aeradio, Cranbrook Aeradio failed to ask the pilot for an updated E.T.A. and the pilot did not determine whether the snow removal equipment had left the runway. The jury further found the pilot's decision to attempt a "go-around" was contrary to a caution issued to PWA pilots because of the risk of possible failure of a thrust reverser to return to the forward position after reverse thrust had been initiated.[2]

PWA, Boeing, the government of Canada and the City of Cranbrook have entered into an agreement authorizing PWA to negotiate settlements of all passenger claims, leaving the ultimate allocation of responsibility on the basis of respective fault for later resolution. Pursuant to the agreement, PWA through respective counsel has contacted every claimant offering to negotiate a settlement or to stipulate to liability and to try the issue of damages in Canada if a negotiated settlement cannot be reached. A fund in Canada for payment of judgments and settlements has been created.

### The Doctrine of Inconvenient Forum

The doctrine of inconvenient forum has been codified as Code of Civil Procedure section 410.30. (*Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 109 [90 Cal.Rptr. 461].) It provides in subdivision (a): "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

■ The doctrine is basically equitable in nature, "embracing the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action before it may be more appropriately and justly tried elsewhere." (*Leet* v. *Union*

---

[2]The Boeing 737 aircraft involved in the accident is powered by two jet engines, one mounted under each wing. A "thrust reverser" system is attached to the rear of each engine to decelerate the aircraft during a landing. The thrust reverser consists of two metal deflector doors, semicylindrical in shape, which when closed ("stowed") form a full cylinder surrounding the jet engine exhaust. When the two doors are rotated rearward to a deployed position behind the engine exhaust, the doors act to block the exhaust gas and divert it in a forward direction, thereby causing the aircraft to decelerate.

*Pac. R. R. Co.* (1944) 25 Cal.2d 605, 609 [155 P.2d 42, 158 A.L.R. 1008].) Consequently, the determination of whether to apply the doctrine rests within the sound discretion of the trial court, to be exercised on a case-by-case basis and "in conformity with the spirit of the law and in a manner to subserve and not impede the ends of substantial justice." (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App. 3d at p. 110.) The trial court's determination will not be disturbed on appeal absent the showing of an abuse of discretion, which appears when the order is unsupported by substantial evidence under apposite law. (*Bechtel Corp.* v. *Industrial Indem. Co., supra,* 86 Cal.App.3d at p. 48; *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d at pp. 310-311.)

The primary factors which must be weighed by the trial court in ruling on the motion are firmly established and have been articulated in a number of decisions applying the doctrine. (See e.g. Judicial Council com. to Code Civ. Proc., § 410.30; *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d 105, 113-115; *International Harvester Co.* v. *Superior Court, supra,* 95 Cal.App.3d 652, 656; *Belnap Freight Lines, Inc.* v. *Petty* (1975) 46 Cal.App.3d 159, 162 [119 Cal.Rptr. 907]; *Gould, Inc.* v. *Health Sciences, Inc.* (1976) 54 Cal.App.3d 687, 693 [126 Cal.Rptr. 726].) ▮ They include the amenability of the parties to personal jurisdiction in this state and in the alternative forum; the relative convenience to the parties and trial witnesses of the competing forums; the differences in the conflict of law rules applicable in the competing forums; the selection of a convenient, reasonable and fair place of trial; defendant's principal place of business; the extent to which the cause of action arose out of events related to this state; the extent to which any party will be substantially disadvantaged by a trial in either forum; the relative enforceability of judgments rendered in this state or the alternative forum; the relative inconvenience to witnesses and relative expense to parties of proceeding in this state or the alternative forum; the significance and necessity of a view by the trier of fact of physical evidence not conveniently movable from the alternative forum; the extent to which prosecution of the action in this state would place a burden upon this state's judicial resources equitably disproportionate to the relationship of the parties or cause of action to this state; the extent to which the relationship of the moving party to this state obligates him to participate in judicial proceedings here; this state's interest in providing a forum for some or all of the parties; this state's public interest in the litigation; the avoidance of multiplicity of actions and inconsistent adjudications; the relative ease of access to sources of

proof; the availability of compulsory process for attendance of witnesses; the relative advantages and obstacles to a fair trial; the burden upon jurors, local court and taxpayers of a jurisdiction having a minimal relation to the subject of the litigation; the difficulties and inconveniences to defendant, the court and jurors incident to the presentation of evidence by deposition; and the availability of the suggested forum. (See also *Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501, 508 [91 L.Ed. 1055, 1062, 67 S.Ct. 839, 843].)

■ A court may not consider, however, the probability, if such exists, that a California jury may be more generous in its award than the proper forum. (*Great Northern Ry. Co.* v. *Superior Court, supra*, 12 Cal.App.3d at p. 112.) We have assumed solely for the purpose of the discussion which follows that if these cases were tried in California the law of this state, including damages, would apply, and as a result of that application a greater award of damages is likely. We wish to emphasize that our hypothesis as to the amount of damages may well be an "unproven premise" for damages imposed by thoughtful and conscientious jurors in British Columbia may be no less than those determined by a jury in California. (See *Gulf Oil Corp.* v. *Gilbert, supra*, 330 U.S. 501, 510 [91 L.Ed. 1055, 1063, 67 S.Ct. 839, 844].)

*Discussion*

If the task of ruling on a motion to dismiss on the grounds of inconvenient forum were limited to merely counting the factors in favor of granting or denying the motion, the court's job would indeed be simple. For example, here where we are dealing with an accident which occurred in Canada involving a Canadian airline on which all passengers were Canadian, the application of a number of the foregoing factors which favor a trial in Canada become obvious. Much, if not all, of the relevant evidence relating to the cause of the crash, including material information from the employees and records of PWA, the City of Cranbrook, the air traffic services of the Canadian government, the various eyewitnesses and the report of the official investigation are in Canada. The Canadian courts have a strong interest in compensating local claimants and in assessing the responsibility of the resident defendants for the accident, especially where the majority of the alleged tortfeasors are Canadian governmental entities. "In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn

of it by report only. There is a local interest in having localized controversies decided at home." (*Gulf Oil Corp.* v. *Gilbert, supra,* 330 U.S. 501, 509 [91 L.Ed. 1055, 1062-1063, 67 S.Ct. 839, 843].)

It is also apparent that numerous, essential Canadian witnesses would not be subject to subpoena by a California court. Consequently, the unavailability of the employees of the principal Canadian parties and their respective, crucial liability testimony would be equally harmful to the presentation of both plaintiffs' and defendants' respective cases.

A court, however, must make more than a quantitative analysis in ruling on a defendant's motion to dismiss on the grounds of inconvenient forum. There must be a qualitative analysis with heavy weight given not only to plaintiff's choice of forum, but the effect of that choice of forum on conflict of law rules and this state's private and public interest in the litigation. We must remember that courts do exist for the trial of cases and although the courts of this state are heavily burdened, hopefully they have not become an endangered specie to deprive litigants who are properly here from the fair use of those resources.

Plaintiffs quite properly ask us to focus on these latter considerations in reviewing the trial court's exercise of discretion. They claim California has an overriding and substantial state interest in applying its law to resident corporate defendants who design or manufacture defective products in this state. They allege the accident was caused in part by a defective thrust reverser system and associated hardware manufactured and designed by Rohr, a San Diego based resident corporation, and Boeing, a corporation doing business in California. They emphasize it is essential for Rohr which failed to warn of the known defects in the 737 thrust reverser system and failed to recommend design changes to face the "'sting of unlimited recovery. . .[which] more effectively penalize[s] the culpable defendant and deter[s] it and others similarly situated from such future conduct' [citation]." (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 584 [114 Cal.Rptr. 106, 522 P.2d 666].)

They acknowledge that although Canada has no statutory ceiling on damages (cf. *Hurtado* at pp. 578-579 where the maximum recoverable under Mexican law is approximately $1,900), the elements of damages which may be considered in Canada will necessarily result in lower damages there. They allege that unlike California, Canada does not permit an allowance for further inflation in assessing loss of future earnings and compensation for loss of society, comfort and protection is

either nonexistent or outrageously low. Further, in Canada lost earning damages are based on after tax income and Canada requires substantial reductions for such contingencies as future illness, prospective financial disasters, personality defects, remarriage and inheritance. Thus, when these actions are sent to Canada, California policy will be thwarted for a California resident corporate defendant will not be held accountable to California standards for a defective product designed and produced by it in California and used in aircraft in which many California citizens fly.

Preliminarily, the factual underpinning for plaintiffs' argument must be examined. The fact that they believe their allegations against Rohr may be provable at trial does not establish the truth of those allegations. Their hypothesis is not binding on the trial court. A trial judge must consider and review all the declarations, papers and data which are submitted in connection with the motion to get an intelligent overview of the entire action and to develop an insight into the relationship between the parties before a determination of forum non conveniens can be made. Although in ruling on the motion, the court does not make a factual finding which is determinative on any issue at trial, it must evaluate the respective involvement of the various defendants in order to weigh the various factors necessary for the exercise of its discretion. If a court were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on forum non conveniens being granted in that case would be substantially reduced.

On the question of Rohr's responsibility for the Cranbrook accident, Boeing has conceded below that the hydraulic controls which govern how and under what circumstances the thrust reverser deflector doors will open and close were designed and manufactured by it in the State of Washington. Although the thrust reflector doors and associated hardware were manufactured by Rohr, the system by which the doors open and close is solely that of Boeing. On this issue the Federal District Court Judge said: "Plaintiffs' own exhibit tends to support [Boeing's] explanation. The Government of Canada's investigation report, relied upon by plaintiffs, fails to evidence any causal relationship between the hardware manufactured and designed by Rohr in the accident. Thus, plaintiffs' assertion that Rohr was responsible for the accident would seem to be questionable." (See Orr v. *The Boeing Company, supra*, CV79-526 C.D.Cal., Apr. 25, 1979.) The trial judge in these cases similarly concluded that at best there was only a nominal connection between Rohr and the facts relating to the accident.

More importantly, however, even if Rohr may be liable to plaintiffs, other defendants, including but not limited to Boeing, may also be legally responsible. ██ In determining whether "it is in the interest of substantial justice" to dismiss an action, a court must not only consider the governmental interest vis-à-vis plaintiff and defendant, but also the governmental interest affecting the relationship among defendants. A court may not ignore California's public policy considerations relating to the equitable apportionment of liability among defendants in multi-party tort litigation which in decreasing order of priority are (1) the maximization of recovery to the injured party, (2) settlement of the injured party's claim, and (3) equitable apportionment of liability among concurrent tortfeasors. (*American Bankers Ins. Co.* v. *Avco-Lycoming Division* (1979) 97 Cal.App.3d 732, 736 [159 Cal.Rptr. 70].)

██ Obviously, California has a significant interest where defective products manufactured in this state cause injury to California residents. Under such circumstances where the resident plaintiff sues in California, the doctrine of inconvenient forum cannot even be invoked. (*Archibald* v. *Cinerama Hotels, supra,* 15 Cal.3d at p. 859.) Where plaintiff is from out of state and all defendants are residents of California, not only will defendants feel the "sting of damages" in accordance with California law, but equitable apportionment of those damages among defendants in accordance with California rules is possible. In other words, California's policy involving both plaintiffs and defendants is fully satisfied. (See *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306.)

The difficulty with the present case is that it is not possible to satisfy all of California's policy considerations by retaining the case here and it is equally imposible to satisfy all those policy considerations by requiring trial in Canada. In either situation some policy trade-offs are necessary which the court must consider in the exercise of its discretion.

██ Here, accepting plaintiffs' premise on damages as true, we know the probability that one forum may be more generous than the other may not be considered (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 112), and although defendants Rohr and Boeing may not feel the full sting of damages as computed in accordance with California law, they nevertheless will feel some sting from the damages imposed by the Canadian court. Counterbalancing this consideration are the factors of settlement and equitable apportionment of liability among concurrent tortfeasors. As to the former, an

amicable resolution is always more fairly accomplished when all parties are involved. The pressure that can be exerted against one or two defendants when others may also be responsible places an unfair burden on those defendants who may be required to pay a disproportionate amount because all parties are not participating in the settlement. We also know the likelihood of settlement is reduced when all parties are not involved for there is always a tendency by the defendant present at the settlement discussion to point the finger at the missing defendant who invariably is described as the real culprit without whom the case cannot be resolved.

As to the apportionment of damages in these cases, we have before us only one California resident, Rohr. Although California has jurisdiction over Boeing, it cannot acquire jurisdiction over any of the Canadian defendants so essential for a complete resolation of these actions. If California law truly maximizes plaintiffs' recovery, only the two defendants in the California court will be assessed those damages and any apportionment of damages will be limited to those defendants. Not only is there a possibility that the damages may be skewed in California because of the absence of essential parties, but complete apportionment of liability among all defendants responsible for the accident cannot be accomplished. Rohr and Boeing, at considerable additional expense, will be required to pursue their respective rights for indemnity in Canada against the other parties responsible for the accident. Thus, by insisting the case remain here, we will have frustrated California's policy in multiparty tort litigation by reducing the possibility of settlement and eliminating, or at least making more costly, the equitable apportionment of damages based on comparative fault among all responsible parties.

If, however, the case is initially tried in Canada where PWA, the Ministry of Transport, the City of Cranbrook and the Boeing Company have entered into an agreement to expedite the settlement of claims, California's policy is more fully satisfied for that agreement expressly provides that indemnity is to be based on the respective fault of the participants. Moreover, the tenor of that agreement and the approach taken by the parties who have heretofore appeared in Canada, undoubtedly will expedite the amicable resolution of not only the plaintiffs' claims, but the allocation of damages among defendants. When these factors are taken into consideration with all the other factors supporting

the trial of these cases in Canada, the discretion exercised by the trial court is amply supported by substantial evidence.

*Disposition*

Judgment affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

A petition for a rehearing was denied June 23, 1980, and appellants' petition for a hearing by the Supreme Court was denied July 30, 1980.