[No. B043491. Second Dist., Div. Two. June 5, 1990.]

NORTHROP CORPORATION, Plaintiff and Appellant, v.
AMERICAN MOTORISTS INSURANCE COMPANY, Defendant
and Respondent.

COUNSEL

Paul, Hastings, Janofsky & Walker, Hill, Wynne, Troop & Meisinger, Kirk A. Pasich and Desiree T. Icaza for Plaintiff and Appellant.

Zelle & Larson, Philip C. Hunsucker, Hans W. Herb, Sedgwick, Detert, Moran & Arnold, Marck C. Raskoff and Dennis M. Alexander for Defendant and Respondent.

## OPINION

FUKUTO, J.—Plaintiff Northrop Corporation appeals from the order granting the motion of defendant American Motorists Insurance Company (hereafter AMICO) to dismiss, on grounds of inconvenient forum, Northrop's action against AMICO and four other insurers concerning insurance coverage for a hazardous chemical spill in Massachusetts. (Code Civ. Proc., §§ 410.30, subd. (a), 904.1, subd. (d).) Because the superior court's determination that the balance of relevant factors favored trial in Massachusetts rather than California is not supported by substantial evidence, the dismissal will be reversed.

### FACTS

Northrop's complaint against its primary liability insurance carrier AMICO, and four companies providing coverage in excess of AMICO's, seeks declaratory relief and damages for breach of contract and breach of the implied covenant of good faith and fair dealing. After setting forth its relationship as the defendants' insured, Northrop alleges that in February 1985 it discovered a spill of an industrial solvent, "TCA," from storage tanks at Northrop's Precision Products Division, in Norwood, Massachusetts. Subsequently, in 1987, the Massachusetts Department of Environmental Quality Engineering ordered Northrop to perform remedial action. In 1988, an adjacent landowner commenced suit against Northrop in United States District Court in Massachusetts, seeking compensation for property damage. Northrop anticipates additional public and private claims arising out of the TCA spill.

Northrop further alleges it tendered the existing claims to the defendants for defense and indemnification. AMICO specifically denied responsibility under its policies, and Northrop expects the excess carriers to do likewise. Claiming entitlement to defense and indemnification under defendants' policies, Northrop seeks a declaration to this effect. In successive causes of action, Northrop also prays damages against AMICO, for breach of contract and implied covenant by the refusal to defend and indemnify.

Upon filing, the case was assigned to a single judge under the superior court's trial court delay reduction project. Each of the excess carriers filed an answer to the complaint. AMICO, however, did not answer, but instead noticed a motion to dismiss or stay the action on account of inconvenient forum. The motion included a declaration by AMICO's counsel, based on his review of materials supplied AMICO by Northrop in connection with its insurance claim. Counsel identified 11 listed individuals—from Northrop, the Massachusetts environmental department, Northrop's Massachusetts

neighbors, and the foregoing parties' environmental consultants—who "possess knowledge of the nature, extent, and location of Northrop's TCA pollution." In addition, counsel declared, "documents concerning the pollution" are situated with the Massachusetts department and the other entities, including Northrop, in proximity to Norwood.[1] In a second declaration, counsel's legal assistant affirmed, based on information from Massachusetts officials, that all the defendant insurers, including AMICO, were licensed to do business in Massachusetts, and that Precision Products Corporation was incorporated in Massachusetts on November 25, 1988.

In its points and authorities, AMICO further asserted that at least five issues in the case required "a consideration of site-specific facts," which in turn would involve Massachusetts witnesses or documents. The issues so identified were: (1) whether there was a covered "occurrence," and specifically whether Northrop expected or intended the damage; (2) whether and when any bodily injury or property damage occurred; (3) whether the spill was "sudden and accidental," a determination bearing upon a policy exclusion; (4) whether Northrop's claims were barred, in whole or in part, because they involved damage to Northrop's own property; and (5) whether Northrop's notice of claim to the insurers was prejudicially untimely. For these and other reasons, AMICO prayed that the action be dismissed or, alternatively, stayed, in favor of proceedings in Massachusetts.

In opposition, Northrop filed a declaration by its risk management director, to the effect that Northrop is a substantial California corporate resident, having its principal place of business in Los Angeles since 1939, employing 32,200 people in California, and having paid between $31 million and $58 million in California taxes in each of the years 1984 through 1987. He further stated that the insurance policies at issue, including AMICO's, were obtained in California by Northrop's Los Angeles insurance broker and delivered to Northrop there. Employees in the company's risk management department during the period in which the AMICO policies were obtained reside in the Los Angeles area. Northrop provided copies of AMICO's policies (which indicated premiums payable of well over $1 million for two years), and Northrop's complaint in another pending Los Angeles superior court action, concerning insurance coverage for environmental pollution proceedings involving three other sites, outside of Massachusetts. (AMICO is not a party to that case.)

The covering declaration by a legal assistant also included copies of orders concerning a motion to dismiss a Santa Clara lawsuit for

---

[1] Attached to this declaration were copies of the Massachusetts department's notices of responsibility, the complaint in the Massachusetts federal court action, and also a letter from Northrop's Los Angeles insurance broker, transmitting the Massachusetts department's demands to AMICO in August 1987, more than two years after the TCA spill.

inconvenient forum, and copies of the insurance industry service Best's, representing the amount and percentage of California business conducted by the defendants. (AMICO's direct premium writings in California for the 1988 edition exceeded $200 million and constituted the company's largest per-state percentage.) Northrop also filed a declaration by a former California Insurance Commissioner, providing his opinions as to Northrop's and California's interests in having the action tried there. AMICO objected to all of these matters on various evidentiary grounds.

In its points and authorities, Northrop disputed whether most of the witnesses necessary were in Massachusetts, observing that its own witnesses concerning intrinsic insurance policy questions resided in California. Moreover, Northrop offered to "provide its employee witnesses for deposition and its documents for review at a centralized California location." Northrop further suggested judicial economy could be served by consolidated or concurrent decision of this action and Northrop's other pollution coverage case. AMICO filed a reply contesting Northrop's actual willingness to combine the two cases, and emphasizing that the Precision Products Corporation was not a California resident.

The trial court ruled that the action should be dismissed, because "the interests of substantial justice require the trial of this cause in Massachusetts." The expressed basis for this determination was that, "Considering the criteria identified in *Great Northern Railway Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105 [90 Cal.Rptr. 461], the Court concludes that a strong preponderance of the same weighs in favor of the motion, particularly those touching upon the convenience to and amenability to process of witnesses to the events underlying moving party's alleged breach."[2]

## DISCUSSION

Code of Civil Procedure section 410.30, subdivision (a) provides in relevant part: "[W]hen a court upon motion of a party . . . finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action." (The second sentence was added in 1986 and is further discussed below.) ■ A court's decision to dismiss an action under this subdivision is discretionary, and "will be disturbed upon appeal only when the order is unsupported by substantial evidence under apposite law."

---

[2] The court also sustained AMICO's objections to portions of the declaration of Northrop's legal assistant, and to unspecified portions of the former insurance commissioner's declaration, which AMICO had sought to exclude entirely.

(*Dendy* v. *MGM Grand Hotels, Inc.* (1982) 137 Cal.App.3d 457, 460 [187 Cal.Rptr. 95].) We therefore first examine the "apposite law" governing the trial court's discretion.

Perhaps most frequently cited and utilized as guides are the 25 factors first compiled in *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 113-115 [90 Cal.Rptr. 461] (hereafter *Great Northern*). The trial court's minute order here referred to this list, and it apparently is literally used as a check list by Los Angeles Superior Court judges. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (1989) p. 3-111.) Although many of the *Great Northern* factors overlap, as presented they fall into three roughly equal groups, distinguishable as concerning either (1) the relationship of the lawsuit and the parties to the forum and alternative forum, (2) the convenience to the parties and to witnesses of litigating in the chosen and alternative forums, or (3) what might be termed the interests of efficient judicial administration.[3]

The factors listed in *Great Northern* and the other authorities just cited do not bear equal weight. (*Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at p. 586.) In particular, one factor subsumed in the list is particularly prominent and, when it appertains, provides a starting point for

---

[3] In brief, it would appear that *Great Northern*'s numbered factors addressing the relationships of the case and the parties are 1 (defendant's amenability to process), 4 (defendant's principal place of business), 5 (relationship of the underlying facts to the forum), 11 (whether local prosecution will unfairly burden the courts in view of the parties' and the case's relationship to the state), 12 (relationship of the parties to California requiring participation here), 13 (California's interest in providing forum for some or all parties), 14 (California's interest in regulating the conduct involved), and 19 (the public interest in the case).

Factors involving convenience to parties and witnesses are 2 (relative convenience of alternative forum), 6 (disadvantages to parties of each forum), 8 (inconvenience to witnesses in either forum), 9 (relative expense of pursuing the case in each forum), 10 (whether a view of the premises by the trier will be necessary or helpful), 16 (relative ease of access to sources of proof), 17 (availability of compulsory process for witnesses), 18 (relative advantages and obstacles to fair trial), 23 (inconveniences of presenting testimony by depositions), and 25 (other practical considerations making trial inexpensive and expeditious).

Finally, concerns of judicial administration are addressed by factors 3 (respective differences in conflict of laws rules), 7 (enforceability of a judgment in California), 15 (avoidance of multiplicity of actions and inconsistent adjudications), 20 (relative probability of inconveniences from court and calendar congestion), 21 (whether jury duty will be imposed on a community unrelated to the case), 22 (burden on local courts and taxpayers), and 24 (availability of the alternative forum).

Other, similar lists, with similar distributions of concerns, are found in the Judicial Council's comment to the enactment of Code of Civil Procedure section 410.30 (Judicial Council of Cal. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 410.30, pp. 491-492 [hereafter cited as Judicial Council comment]), and in *Hemmelgarn* v. *Boeing Co.* (1980) 106 Cal.App.3d 576, 584-585 [165 Cal.Rptr.190], which cites both *Great Northern* and the Judicial Council comment as sources.

the analysis: the plaintiff's choice of a California forum, where the plaintiff is a California resident. As early as the enactment of section 410.30, the Judicial Council stated that "[t]he two most important factors look to the court's retention of the case," the first of these being "that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons." (Judicial Council comment, p. 492; accord *Klein* v. *Superior Court* (1988) 198 Cal.App.3d 894, 901 [244 Cal.Rptr. 226]; *Holmes* v. *Syntex Laboratories, Inc.* (1984) 156 Cal.App.3d 372, 379, 381 [202 Cal.Rptr. 773]; *Dendy* v. *MGM Grand Hotels, Inc.*, *supra*, 137 Cal.App.3d at p. 460.) This presumption in favor of exercising rather than refusing to exercise properly acquired jurisdiction is fortified, with respect to local plaintiffs, by this state's interest in according a judicial forum to its residents for the redress of their grievances. (See *Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738, 742-743 [59 Cal.Rptr. 101, 427 P.2d 765].) Until recently, the combined strengths of the California plaintiff's interest in a local forum and the state's interest in providing it dictated that an action by and on behalf of a California resident simply could not be dismissed on grounds of inconvenient forum (although it could be stayed). (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 858-860 [126 Cal.Rptr. 811, 544 P.2d 947].) And a prevailing insurance coverage case, involving corporations "resident" in California by principal place of business, further held that a dismissal *or* stay on grounds of inconvenient forum could not be granted when both plaintiff and defendant were California residents. (*Bechtel Corp.* v. *Industrial Indem. Co.* (1978) 86 Cal.App.3d 45, 52-53 [150 Cal.Rptr.29].)

Northrop therefore quite properly begins its challenge to the trial court's dismissal by relying on the importance of a California plaintiff's choice of a California court, for although not a natural person, Northrop established by uncontradicted evidence that it is a California resident within the meaning of *Bechtel, supra*, 86 Cal.App.3d at page 48, and a significant one at that. However, AMICO counters that the importance of Northrop's California residence has been deflated by the 1986 amendment to Code of Civil Procedure section 410.30, subdivision (a), which provides that the California residence of any party shall not preclude a stay or dismissal for inconvenient forum. AMICO relies on statements in the two published opinions that have considered and applied the amendment, to the effect that "the Legislature intended that future decisions assign less weight than hitherto to the factor of the plaintiff's local residence." (*Klein* v. *Superior Court, supra*, 198 Cal.App.3d at p. 901; accord *Credit Lyonnais Bank Nederland, N.V.* v. *Manatt, Phelps, Rothenberg & Tunney* (1988) 202 Cal.App.3d 1424, 1434

[249 Cal.Rptr. 559] [hereafter *Credit Lyonnais*].)[4] In reply, Northrop argues the amendment did not obliterate prior authority and policy concerning the matter of a plaintiff's California residence, and that even with "less weight" accorded, its significance still should be hefty.

■ The plain meaning of the statute compels Northrop's position. The interests and policies according weight to a California resident's choice of forum are substantial and "deeply rooted." (*Klein* v. *Superior Court, supra*, 198 Cal.App.3d at p. 901.) ■ And there is no evidence that the 1986 amendment to section 410.30, subdivision (a) had any purpose greater than its express effect: to reverse the holdings of such cases as *Archibald* v. *Cinerama Hotels, Inc., supra*, and *Bechtel Corp.* v. *Industrial Indem. Co., supra*, that flatly precluded dismissal if the plaintiff was a California resident, and even a stay if both plaintiff and defendant were residents. The amendment's legislative history, reviewed in the *Credit Lyonnais* decision (202 Cal.App.3d at pp. 1432-1434) and also examined by us, indicates no more sweeping revisionary intent. Indeed, *Credit Lyonnais* identified as the source of the amendment an identically worded New York Civil Practice Rule, enacted in 1972 (see *id.* at p. 1434), before which time New York had a black-letter rule against dismissal of actions *by or against* local residents, far more extreme than California's. (See *Thomson* v. *Continental Ins. Co., supra*, 66 Cal.2d at pp. 743-744; *Silver* v. *Great American Insurance Co.* (1972) 29 N.Y.2d 356 [328 N.Y.S.2d 398, 278 N.E.2d 619].)[5] Accordingly, we perceive in the 1986 amendment no mandate to diminish the naturally substantial status of a plaintiff's California residence in the inconvenient forum analysis, other than the statute's clear and express relaxation of preexisting bars to dismissing or staying cases of that type. The Legislature has remitted these cases to judicial discretion, but in that discretion the California residency of a plaintiff such as Northrop still must weigh heavily.

This imperative is not diminished in the present case by AMICO's emphasis that the Precision Products Corporation is a Massachusetts, not California, corporation. Northrop claims not to have any relationship with that corporation, which was formed years after the activities in suit, as contrasted with the identically named division referred to in the complaint. Regardless, what is significant is that Northrop, not Precision Products, is the respondent in the Massachusetts administrative proceeding, the defendant in the Massachusetts federal court suit, the named insured under

[4] More recently, another decision has echoed this characterization. (*Delfosse* v. *C.A.C.I., Inc.-Federal* (1990) 218 Cal.App.3d 683, 688, fn. 4 [267 Cal.Rptr. 224].)

[5] The New York Court of Appeals abrogated its previous restrictive doctrine in 1972, apparently paving the way for enactment of the new rule, which had been legislatively stalled. (*Silver* v. *Great American Insurance Co., supra*, 278 N.E.2d at p. 622.)

AMICO's policies, and the plaintiff here. Nor is there any utility to AMICO's citation of *Appalachian Ins. Company* v. *Superior Court* (1984) 162 Cal.App.3d 427, 435-436 [208 Cal.Rptr. 627], for the proposition that business conducted in California does not give a national corporation the favored position of a California resident. *Appalachian*, which dismissed a suit by a New York corporation against a Rhode Island insurer concerning coverage of a New York accident and lawsuit, went on to say, "A different situation would be presented if the litigants were incorporated in California or had their principal place of business here." (*Id.* at p. 436, fn. 3.)

Because Northrop's California residency weighs heavily in the inconvenient forum calculus, the next question is whether other relevant factors fall sufficiently in the opposite direction to defeat Northrop's choice of forum. ▉ The factors enumerated in *Great Northern* which concern the relationships of the parties and the lawsuit to the chosen and alternative forums predominantly either are neutral between Massachusetts and California or favor the latter. Massachusetts receives favor as an available forum, because AMICO showed that all defendants could also be sued there; but that is effectively a precondition for even considering stay or dismissal based on inconvenient forum. (See Judicial Council comment at p. 492; *Delfosse* v. *C.A.C.I., Inc.-Federal, supra*, 218 Cal.App.3d 683.) ▉ On the other hand, the cause of action is at least as substantially related to California as to Massachusetts, because Northrop's suit involves the construction, application and alleged breach of contracts obtained, undertaken, and delivered in California, to insure the albeit worldwide activities of a California resident business. For this reason too—and quite apart from the ex cathedra declaration of Northrop's insurance commissioner witness, to which AMICO validly objected as such (see *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 884 [254 Cal.Rptr. 336, 765 P.2d 498])—California unquestionably has an interest in regulating the issues in suit, which are not whether Northrop will be held liable for pollution in Massachusetts, but who will pay for Northrop's legal defense and prospective liability in that regard. Finally, AMICO's and the other defendants' principal place of business is at best a neutral factor, as AMICO conceded in the trial court: none of the defendants is either a California or Massachusetts corporation, and even if one were to discredit (for lack of personal knowledge) the information Northrop proffered from Best's about the defendants' substantial California underwritings, there was equally no evidence about the extent of their business or other contacts with Massachusetts, other than that they are licensed there.

▉ The next group of *Great Northern* factors, involving concerns of judicial administration, also either favor California or are neutral. There is

no problem as to conflict of laws rules or enforceability of a judgment from either jurisdiction; both Northrop and AMICO characterized these elements below as neutral. The same appears true as to the possibility of inconsistent or multiple adjudications. Although Northrop continues to insist such a prospect could be avoided by consolidation of the present case with Northrop's other environmental pollution coverage case in the superior court, absent effective action in that direction the factor remains neutral. On the other hand, given California's interest in this controversy over insurance locally provided to one of its residents, there would be no injustice to taxpayers, the court system, or prospective jurors in adjudicating the action here. Finally, court congestion is at worst a neutral factor, for two reasons. First, the parties offered no evidence about the calendar condition of the Massachusetts courts to which AMICO wishes the suit remitted. Second, although the congested condition of the Los Angeles superior court is judicially noticeable, this case has been assigned to a "fast track" delay reduction program, designed and operated to move it rapidly.

It thus appears that the plaintiff's residence, the relationship of the other parties and the cause of action to California, and relevant public interests of effective judicial administration collectively favor retention in California rather than transfer to Massachusetts.  ██  There remain for consideration, however, 10 of the numbered *Great Northern* factors, which look toward the question of inconvenient forum in a practical sense, by evaluating elements of convenience to parties and witnesses.[6] The superior court's decision recites that that court was particularly influenced by "those [factors] touching upon the convenience to and amenability to process of witnesses to the events underlying [AMICO's] alleged breach." And indeed, this was the only basis on which the superior court could have contemplated granting AMICO's motion, in view of the opposing balance of other factors, as discussed. The issue therefore posed is whether the evidence supports a determination that these factors of convenience weigh heavily enough in favor of Massachusetts to override the factors favoring California.

The evidence on AMICO's side of this question consisted of counsel's identification, from examining Northrop-supplied papers, of about a dozen Massachusetts-based individuals with "knowledge of . . . Northrop's TCA pollution," together with a representation that a number of issues in the

---

[6]These factors fall into five pairs (*Great Northern*'s numbers in parentheses): convenience to parties and witnesses (2, 8); availability of compulsory process and inconvenience of testimony by deposition (17, 23); disadvantages and expense to parties of each forum (6, 9); access to sources of proof and, if necessary, a view of the premises (10, 16); and general opportunity for fair, convenient and expeditious trial (18, 25).

case would require site-specific evidence. (See p. 1558, *ante.*) With appropriate deference, we are unable to draw from these general assertions substantial evidence that trial of this action will require a predominant cast of Massachusetts witnesses. Traditionally, insurance coverage suits principally concern questions of law and language, not physical fact, and involve more paper than live witnesses. Often the issues can be resolved by a comparison of policies and pleadings (see *Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 571-572 [218 Cal.Rptr. 407]), and, if coverage questions yet remain because of uncertainty over the nature or basis of damages to be awarded, those issues may be deferred to resolution of the proceedings on the third party claim. Other courts confronted with the same statement of "site-specific" issues AMICO makes here have declined to dismiss for inconvenient forum and have expressed parallel recognition of the scope and structure of a pollution coverage case. (*Westinghouse Electric Corp.* v. *Liberty Mut. Ins.* (1989) 233 N.J.Super. 463 [559 A.2d 435, 442-443]; *Monsanto Co.* v. *Aetna Cas. and Sur. Co.* (Del.Super. 1988) 559 A.2d 1301, 1306-1307.)[7]

Furthermore, to the extent the Massachusetts witnesses may become necessary to the case, ameliorative measures are available. Northrop has already offered to make its own employee witnesses available in California, and Northrop would have incentive to do likewise with its east coast environmental consultants. (Cf. *Holmes* v. *Syntex Laboratories, Inc., supra,* 156 Cal.App.3d at pp. 389-390.) Indeed, the retained experts appear to be the primary sources of knowledge and opinion about the effects of the TCA spill, and such individuals presumably are professionally suited to travel to testify. Moreover, the technical nature of their testimony might make its delivery by deposition more beneficial than hindering.

In short, the convenience and availability of foreign witnesses, although of some significance on this record, simply did not justify a refusal to exercise jurisdiction in the face of other factors favoring local prosecution. ■ This conclusion is fortified by the failure of AMICO's four codefendants to join in the motion to dismiss. Although the responsibilities of these insurers are secondary to AMICO's, their willingness to answer the complaint and defend the action below is strong circumstantial evidence that these parties to the action are not inconvenienced by litigating in California. And proper decision of an inconvenient forum motion of course requires considering the convenience of all parties, as well as of witnesses

---

[7] The Delaware case also colorfully rejected the assertion that a view of the premises may be necessary in determining a pollution coverage dispute—"A waste site can only offer a view of a, 'hole or a pile'. The waste site does not offer documents or witnesses." (559 A.2d at p. 1308, fns. omitted.)

and the court. (See *Credit Lyonnais, supra,* 202 Cal.App.3d at p. 1434, fn. 16; *Dendy* v. *MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d at p. 461.)

The order dismissing the action is reversed. Northrop shall recover its costs.

Roth, P. J., and Gates, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 23, 1990.