# IN THE SUPREME COURT OF CALIFORNIA

ROCKEFELLER TECHNOLOGY INVESTMENTS (ASIA) VII,
Plaintiff and Respondent,

v.

CHANGZHOU SINOTYPE TECHNOLOGY CO., LTD.,
Defendant and Appellant.

S249923

Second Appellate District, Division Three
B272170

Los Angeles County Superior Court
BS149995

April 2, 2020

Justice Corrigan authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

ROCKEFELLER TECHNOLOGY INVESTMENTS (ASIA) VII
v. CHANGZHOU SINOTYPE TECHNOLOGY CO., LTD.

S249923


Opinion of the Court by Corrigan, J.


The parties here, sophisticated business entities, entered into a contract wherein they agreed to submit to the jurisdiction of California courts and to resolve disputes between them through California arbitration. They also agreed to provide notice and "service of process" to each other through Federal Express or similar courier. The narrow question we address is whether the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (Hague Service Convention or "the Convention") preempts such notice provision if the Convention provides for a different method of service. Consistent with United States Supreme Court authority, we conclude that the Convention applies only when the law of the forum state requires formal service of process to be sent abroad. We further conclude that, because the parties' agreement constituted a waiver of formal service of process under California law in favor of an alternative form of notification, the Convention does not apply. We reverse the Court of Appeal's contrary decision.

## I. BACKGROUND

Changzhou SinoType Technology Co., Ltd. (SinoType) is based in China and specializes in developing Chinese graphical fonts. During 2007 and 2008, its chairman, Kejian "Curt"

1

Huang, discussed forming a new company with Faye Huang, president of Rockefeller Technology Investments (Asia) VII (Rockefeller).[1]  In February 2008, they signed a Memorandum of Understanding (MOU).  The MOU reflected an intent to form the new company, allocate interests and responsibilities between the two existing companies and transfer assets to the new entity.  The MOU provided that the parties would, "with all deliberate speed, within 90 days if possible," attempt to draft "long form agreements carrying forth the agreements made" in the MOU.  The MOU also stated, "this Agreement shall be in full force and effect and shall constitute the full understanding of the Parties that shall not be modified by any other agreements, oral or written."  The MOU provided:

"6.    The Parties shall provide notice in the English language to each other at the addresses set forth in the Agreement via Federal Express or similar courier, with copies via facsimile or email, and shall be deemed received 3 business days after deposit with the courier.

"7.    The Parties hereby submit to the jurisdiction of the Federal and State Courts in California and consent to service of process in accord with the notice provisions above.

"8.    In the event of any disputes arising between the Parties to this Agreement, either Party may submit the dispute to the Judicial Arbitration & Mediation Service in Los Angeles for exclusive and final resolution pursuant to according to [sic] its streamlined procedures before a single arbitrator who shall have ten years judicial service at the appellate level, pursuant

_____

[1]    Because Curt Huang and Faye Huang have the same surname, we refer to them by their first names.

2

to California law, and who shall issue a written, reasoned award. The Parties shall share equally the cost of the arbitration. Disputes shall include failure of the Parties to come to Agreement as required by this Agreement in a timely fashion."

Eventually, negotiations broke down and the "long form agreements" were never finalized. In February 2012, Rockefeller sought arbitration. The arbitrator[2] found that SinoType received notice on numerous occasions and "all materials were sent both by email and Federal Express" to the Chinese address listed for it in the MOU.[3] SinoType neither responded nor appeared. In November 2013, the arbitrator concluded Rockefeller was entitled to an award of $414,601,200. His written decision was sent to SinoType by Federal Express and e-mail.

---

[2] Richard C. Neal, former justice of the Court of Appeal, Second Appellate District, Division Seven, served as arbitrator.

[3] Specifically, the arbitrator found: "Written proofs of service in the JAMS [Judicial Arbitration and Mediation Service] file, prepared and signed by JAMS Case Managers, confirm that Respondent was given due written notice of all of the events mentioned above, including submission of the demand for arbitration, commencement of the arbitration, appointment of the Arbitrator, the preliminary telephone conference, the hearing scheduled for September 14, 2012, continuance of the hearing to February 4, 2013, and the Interim Order requiring additional submissions. Notices and copies of all materials were sent both by email and Federal Express to Respondent's Chairman Kejiang 'Curt' Huang, Changzhou Sinotype [sic] Technology Co.[,] Ltd[.], Niutang Town, Changzhou, Jiangsu 213168, China."

Rockefeller petitioned to confirm the award (Code Civ. Proc., § 1285), and transmitted the petition and summons to SinoType through Federal Express and e-mail.  SinoType did not appear and the award was confirmed in October 2014.  In November 2015, Rockefeller sought assignment of various future royalty payments that several companies owed to SinoType.  (See Code Civ. Proc., § 708.510.)  SinoType specially appeared and moved "to quash and to set aside default judgment for insufficiency of service of process."  (See Code Civ. Proc., § 473, subd. (b).)  SinoType asserted that it did not receive actual notice of any proceedings until March 2015 and argued that Rockefeller's failure to comply with the Hague Service Convention rendered the judgment confirming the arbitration award void.  In a declaration supporting the motion, chairman Curt acknowledged that, in January 2012, he had received a letter from Faye that "mentioned arbitration."  He further declared that "[s]ince Faye Huang and others had harassed me previously, and because I did not believe there was any binding agreement between SinoType and [Rockefeller], I decided to ignore the letter and subsequent FedEx packages and emails.  I did not open them."  Curt claimed that he only opened the Federal Express packages in March 2015 after a client told him Rockefeller claimed SinoType owed it money.  The motion to set aside the judgment was denied,[4] but the Court of Appeal reversed.  (See *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2018)

---

[4]    Los Angeles County Superior Court Judge Randolph M. Hammock ruled on the motion.

24 Cal.App.5th 115, review granted Sept. 26, 2018, S249923
(*Rockefeller Technology Investments*).)

## II. DISCUSSION

### A. *The Hague Service Convention*

As to the superior court proceeding to confirm the arbitration award, SinoType argues the Hague Service Convention applies because notice of the proceeding was sent abroad to China, where defendant is based. Mirroring the Court of Appeal's reasoning below, SinoType contends that China's objection to Article 10 of the Convention precludes service in China through Federal Express. SinoType was never properly served, and the judgment confirming the arbitration award is void for lack of personal jurisdiction. (See *Rockefeller Technology Investments*, *supra*, 24 Cal.App.5th at pp. 133-135.) To address this contention, we examine the language of the Hague Service Convention and pertinent United States Supreme Court authority.

The Convention is "a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law . . . [and] was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." (*Volkswagenwerk Aktiengesellschaft v. Schlunk* (1988) 486 U.S. 694, 698 (*Volkswagenwerk*).) The United States was an original signatory, and China adopted it in 1992. (*Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1134-1135 (*Kott*); *Hyundai Merchant Marine v. Grand China Shipping* (S.D.Ala. 2012) 878 F.Supp.2d 1252, 1262, fn. 5; see also *Volkswagenwerk*, at p. 698.)

Article 1 of the Convention states it "shall apply in all cases, in civil and commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." (Hague Service Convention, *supra,* 20 U.S.T. at p. 362.) The Convention requires each member state to "designate a Central Authority which will undertake to receive requests for service coming from other contracting States and to proceed in conformity with the provisions of articles 3 to 6." (*Ibid.*) "The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either— [¶] (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or [¶] (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed." (*Ibid.*) "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries. [Citation.] Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. [Citation.] The central authority must then provide a certificate of service that conforms to a specified model."[5] (*Volkswagenwerk, supra,* 486 U.S. at pp. 698-699.)

---

[5] "Submitting a request to a central authority is not, however, the only method of service approved by the Convention. For example, Article 8 permits service through diplomatic and consular agents; Article 11 provides that any two

As relevant here, article 10 of the Convention states: "Provided the State of destination does not object, the present Convention shall not interfere with— [¶] *(a) the freedom to send judicial documents, by postal channels, directly to persons abroad*, [¶] (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, [¶] (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." (Hague Service Convention, *supra*, 20 U.S.T. at p. 363, italics added.) "Each signatory nation may ratify, or object to, each of the articles" of the Convention. (*Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1045 (*Honda Motor*).) When it adopted the Convention, China objected to article 10.[6] (See *Zhang v. Baidu.com Inc.* (S.D.N.Y. 2013) 932

---

states can agree to methods of service not otherwise specified in the Convention; and Article 19 clarifies that the Convention does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention." (*Water Splash, Inc. v. Menon* (2017) 581 U.S.__, __ [137 S.Ct. 1504, 1508] (*Water Splash*).)

[6] The objection has been noted by the Hague Conference on Private International Law, which administers the Convention. (Hague Conference on Private International Law, Declaration/Reservation/Notification <https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn> [as of April 2, 2020]; the Internet citation in this opinion is archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.)

F.Supp.2d 561, 567.)   By its objection, the nation of China declined to embrace article 10's alternative service methods.

The question here is whether China's objection estops its citizens from agreeing to notification arguably covered by article 10.  Two United States Supreme Court cases inform the application of the Convention.  In *Volkswagenwerk*, the high court addressed whether a foreign corporation could properly be served through a wholly-owned domestic subsidiary.  The court acknowledged that article 1 of the Convention stated it " 'shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.' " (*Volkswagenwerk, supra*, 486 U.S. at p. 699.) However, the high court observed that "[t]he Convention does not specify the circumstances in which there is 'occasion to transmit' a complaint 'for service abroad.'  But at least the term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action.  [Citations.]  The legal sufficiency of a formal delivery of documents must be measured against some standard.  The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state.   If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." (*Id.* at p. 700.)  *Volkswagenwerk* relied upon the negotiating history of the Convention to support its view that "Article 1 refers to service of process in the technical sense" (*ibid.*), and "whether there is service abroad must be

determined by reference to the law of the forum state" (*id.* at p. 701).

While noting that "compliance with the Convention is mandatory in all cases to which it applies" (*Volkswagenwerk*, *supra*, 486 U.S. at p. 705), and "the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies" (*id.* at p. 699), the high court concluded the Illinois long-arm statute at issue authorized service of a foreign corporation through a domestic subsidiary. (*Id.* at p. 706.) As such, under the law of the forum state, "this case does not present an occasion to transmit a judicial document for service abroad within the meaning of Article 1. Therefore the Hague Service Convention does not apply, and service was proper." (*Id.* at pp. 707-708.)

*Water Splash* resolved "a broader conflict among courts as to whether the Convention permits service through postal channels." (*Water Splash*, *supra*, 581 U.S. at p. __ [137 S.Ct. at p. 1508].) The court concluded that article 10(a) does not *preclude* service by mail but warned: "To be clear, this does not mean that the Convention affirmatively *authorizes* service by mail. Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not 'interfere with . . . the freedom' to serve documents through postal channels. In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, *the receiving state has not objected to service by mail*; and second, service by mail is authorized under otherwise-applicable law." (*Id.* at p. __ [137 S.Ct. at p. 1513], second italics added.)

We discern three relevant principles. First, the Hague Service Convention applies only to "service of process in the technical sense" involving "a formal delivery of documents." (*Volkswagenwerk*, *supra*, 486 U.S. at p. 700.) The distinction between formal service and mere notice appears consistent with the Practical Handbook on the Operation of the Service Convention, published by the Permanent Bureau of the Hague Conference on Private International Law for guidance regarding the Convention's application. "[T]he Convention cannot—and does not—determine which documents need to be served. It is a matter for the *lex fori* to decide *if* a document needs to be served and *which* document needs to be served. Thus, if the law of the forum states that a notice is to be somehow directed to one or several addressee(s), without requiring *service*, the Convention does not have to be applied." (Practical Handbook on the Operation of the Service Convention (4th ed. 2016) par. 54, p. 23, fn. omitted; see *Denlinger v. Chinadotcom Corp.* (2003) 110 Cal.App.4th 1396, 1402 [the Convention involves "the concept of formal service of process"].)

Second, *whether* "there is occasion to transmit a judicial or extrajudicial document for service abroad" (Hague Service Convention, *supra*, 20 U.S.T. at p. 362) is determined by reference to the law of the sending forum, in this case California. (*Volkswagenwerk*, *supra*, 486 U.S. at pp. 700-701.) *Volkswagenwerk* concluded there that the sending forum, Illinois, did not require service abroad because its long-arm statute authorized domestic service through a subsidiary. (*Id.* at pp. 706-708.) Thus, because international service was not required, the Hague Service Convention did not apply.

Third, if formal service of process is required under the law of the sending forum, international transmission of service documents must comply with the Convention. "[T]he preemptive effect of the Hague Convention as to service on foreign nationals is beyond dispute." (*Honda Motor*, *supra*, 10 Cal.App.4th at p. 1049.) Thus, *if* the Convention applied here, and assuming service by Federal Express constitutes a species of service by mail,[7] China's objection to foreign mail service under article 10(a) would preclude direct service via Federal Express, regardless of whether California law authorized such service.[8] (See *Water Splash*, *supra*, 581 U.S. at p. __ [137 S.Ct. at p. 1513].) "Failure to comply with the Hague Service Convention procedures voids the service even though it was made in compliance with California law. [Citation.] This is true even in cases where the defendant had actual notice of the lawsuit." (*Kott*, *supra*, 45 Cal.App.4th at p. 1136.)

For the reasons discussed below, we conclude that the parties' agreement constituted a waiver of formal service of process under California law. The parties waived formal service

---

[7] Many of the cases refer to postal or mail service, while the agreement here provided for service through Federal Express, a private courier company. The parties do not argue that there is any relevant difference between a governmental postal service or private courier company. For purposes of this dispute, we assume the Convention's mail service provisions would apply in the same manner to both.

[8] At least one case has suggested that service via Federal Express does not comport with California law because it does not require a signed return receipt. (See *Inversiones Papaluchi S.A.S. v. Superior Court* (2018) 20 Cal.App.5th 1055, 1066-1067.)

in favor of informal notification through Federal Express or similar courier.  Accordingly, the Convention does not apply in this case.

B.  *Jurisdiction, Service of Process and Waiver*

As we recognized over 160 years ago:  "To sustain a *personal* judgment the Court must have jurisdiction of the subject-matter, and of the person.  [Citation.]  Where the jurisdiction of the Court as to the *subject-matter* has been limited by the Constitution or the statute, the consent of parties cannot confer jurisdiction.  But when the limit regards *certain persons, they* may, if competent, waive their privilege, and this will give the Court jurisdiction."  (*Gray v. Hawes* (1857) 8 Cal. 562, 568.)  "Jurisdiction of the subject matter cannot be given, enlarged or waived by the parties. . . .  However, if the court has jurisdiction of the subject matter, the rule is otherwise, and a party may voluntarily submit himself to the jurisdiction of the court, or may, by failing to seasonably object thereto, waive his right to question jurisdiction over him.  Process is waived by a general appearance, in person or by attorney, entered in the action, or by some act equivalent thereto, such as the filing of a pleading in the case *or by otherwise recognizing the authority of the court to proceed in the action.*"  (*Harrington v. Superior Court* (1924) 194 Cal. 185, 188-189, italics added.)

" 'Process' signifies a writ or summons issued in the course of a judicial proceeding."  (Code Civ. Proc., § 17, subd. (b)(7).)  " 'Service of process is the means by which a court having jurisdiction over the subject matter asserts its jurisdiction over the party and brings home to him reasonable notice of the action.' "  (*Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1464, quoting Judicial Council of Cal., com., reprinted at 14 West's

Ann. Code Civ. Proc. (1973 ed.) foll. § 413.10, p. 541; cf. *Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 854.)

Thus, formal service of process performs two important functions. From the court's perspective, service of process asserts jurisdiction over the person. "Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." (*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.* (1999) 526 U.S. 344, 351.) "The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." (*Zenith Corp. v. Hazeltine* (1969) 395 U.S. 100, 110.) From the defendant's perspective, "[d]ue notice to the defendant is essential to the jurisdiction of all courts, as sufficiently appears from the well-known legal maxim, that no one shall be condemned in his person or property without notice, and an opportunity to be heard in his defence." (*Earle et al. v. McVeigh* (1875) 91 U.S. 503, 503-504.) Service of process thus protects a defendant's due process right to defend against an action by providing constitutionally adequate notice of the court proceeding.

Cases have recognized that one may waive both personal jurisdiction and notice aspects of service. "[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether." (*National Rental v. Szukhent* (1964) 375 U.S. 311, 315-316.)

With respect to personal jurisdiction, " ' "[d]ue process permits the exercise of personal jurisdiction over a nonresident

defendant . . . ," ' inter alia, when the defendant consents to jurisdiction. [Citations.] 'A party, even one who has no minimum contacts with this state, may consent to jurisdiction in a particular case.' [Citations.] . . . [¶] Agreeing to resolve a particular dispute in a specific jurisdiction, for example, is one means of expressing consent to personal jurisdiction of courts in the forum state for purposes of that dispute." (*Szynalski v. Superior Court* (2009) 172 Cal.App.4th 1, 7-8.) "While subject matter jurisdiction cannot be conferred by consent, personal jurisdiction can be so conferred, and consent may be given by a contract provision." (*Berard Construction Co. v. Municipal Court* (1975) 49 Cal.App.3d 710, 721.) As the high court has recognized: "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived. . . . A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court. In *National* [] *Rental*[] *v. Szukhent*, [*supra,*] 375 U.S. [at p.] 316 [], we stated that 'parties to a contract may agree in advance to submit to the jurisdiction of a given court,' and in *Petrowski v. Hawkeye-Security Co.*, 350 U.S. 495 (1956), the Court upheld the personal jurisdiction of a District Court on the basis of a stipulation entered into by the defendant. In addition, lower federal courts have found such consent implicit in agreements to arbitrate. [Citations.] Furthermore, the Court has upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." (*Insurance Corp. v. Compagnie Des Bauxites* (1982) 456 U.S. 694, 703-704; see also *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472, fn. 14.)

Similarly with respect to notice, it has long been settled that "[t]he due process rights to notice and hearing prior to a civil judgment are subject to waiver." (*D. H. Overmyer Co. v. Frick Co.* (1972) 405 U.S. 174, 185.) The high court in *Overmyer* affirmed the constitutionality of cognovit clauses, "the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing" (*id.* at p. 176). *Overmyer* reasoned that, "[e]ven if, for present purposes, we assume that the standard for waiver in a corporate-property-right case of this kind is the same standard applicable to waiver in a criminal proceeding, that is, that it be voluntary, knowing, and intelligently made, [citations], or 'an intentional relinquishment or abandonment of a known right or privilege,' [citations], and even if, as the Court has said in the civil area, '[w]e do not presume acquiescence in the loss of fundamental rights,' [citation], that standard was fully satisfied here." (*Id.* at pp. 185-186.) California courts have since applied the voluntary, knowing, and intelligent standard to similar waiver provisions. (See *Isbell v. County of Sonoma* (1978) 21 Cal.3d 61, 70; *Capital Trust, Inc. v. Tri-National Development Corp.* (2002) 103 Cal.App.4th 824, 829-831; *Commercial Nat. Bank of Peoria v. Kermeen* (1990) 225 Cal.App.3d 396, 401.)

C. *California Statutes Regarding Service of Process*

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10; see Cal. Const., art. VI, § 10; *Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512.) Generally, "[e]xcept as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party from the time summons is served on him as provided by

Chapter 4 (commencing with Section 413.10)." (Code Civ. Proc., § 410.50, subd. (a).) Code of Civil Procedure[9] section 413.10 provides that "[e]xcept as otherwise provided by statute, a summons shall be served on a person: [¶] . . . [¶] (c) Outside the United States, as provided in this chapter or as directed by the court in which the action is pending, or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory. These rules are subject to the provisions of the Convention on the 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention)." (§ 413.10, subd. (c).) "A summons may be served on a person outside this state in any manner provided by this article or by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt." (§ 415.40; see § 415.30 [service by mail].) Other prescribed statutory methods of service include personal service (§ 415.10) and leaving documents at an office, dwelling, or mailing address (combined with a subsequent mailing) (§ 415.20). A corporation may be served by presenting documents to its president or chief executive officer, among others. (§ 416.10, subd. (b).)

The present case arises out of Rockefeller's attempt to confirm an arbitration award. "Any party to an arbitration in which an award has been made may petition the court to confirm, correct or vacate the award. The petition shall name

---

[9]     Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

as respondents all parties to the arbitration and may name as respondents any other persons bound by the arbitration award." (§ 1285; see §§ 1288 [time limits for serving and filing petitions], 1290 ["A proceeding under this title in the courts of this State is commenced by filing a petition"].)  "If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." (§ 1286.)  "A petition under this title shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions . . . ."  (§ 1290.2; see § 1005, subd. (b) [service of motions].)

Of particular relevance here are sections 1290.4 and 1293. Section 1290.4, subdivision (a) requires that "[a] copy of the petition and a written notice of the time and place of the hearing thereof and any other papers upon which the petition is based shall be *served in the manner provided in the arbitration agreement for the service of such petition and notice.*"  (Italics added.)  Subdivision (b) provides that if an arbitration agreement "does not provide the manner in which such service shall be made and the person upon whom service is to be made has not previously appeared in the proceeding," a person in California shall be served "in the manner provided by law for the service of summons in an action," or upon a person outside the state "by mailing the copy of the petition and notice and

other papers by registered or certified mail."[10]  (§ 1290.4, subd. (b).)

Under section 1293, "[t]he making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement by the making of any orders provided for in this title and by entering of judgment on an award under the agreement."  This statute codified our decision in *Frey & Horgan Corp. v. Superior Court* (1936) 5 Cal.2d 401, which involved a California corporation's attempt to enforce a contractual arbitration agreement against an out-of-state corporation.  *Frey* reasoned:  "The contracts having been made with direct affirmative reference to the right of arbitration, and particularly with reference to the laws of California, the provisions of [former] section 1282 of the Code of Civil Procedure [pertaining to petitions to compel arbitration] should be read into the contracts as part thereof.  The agreement to submit the dispute to the arbitration committee is an agreement to cooperate in that proceeding.  It is presumed that the contract was made in good faith.  Therefore it was an agreement to submit to the jurisdiction within which the arbitration must operate in order to give it the effect contemplated by the contract and by the law." (*Frey & Horgan Corp.*, at pp. 404-405.)  A later case clarified that *Frey*'s reasoning applied to proceedings to confirm an arbitration award:  "That 'effect' [noted in *Frey*], we are satisfied, includes

---

**10**     Section 1290.4, subdivision (c) concerns service where an arbitration agreement does not specify a method of service but the person has previously made an appearance or been served.

not only the enforcement of arbitration agreements and the conduct of arbitration proceedings, but the enforcement of the award resulting from such arbitration in the manner provided by California law. To hold otherwise would be tantamount to a refutation of the principle of the *Frey & Horgan* case, and would amount to an emasculation and frustration of the purpose and objectives of the arbitration laws of this state." (*Atkins, Kroll & Co. v. Broadway Lbr. Co.* (1963) 222 Cal.App.2d 646, 653.)

### D. *The Parties Waived Formal Service of Process Under California Law*

As discussed *ante*, formal service of process involves two aspects: service as a method of obtaining personal jurisdiction over a defendant and formalized notification of court proceedings to allow a party to appear and defend against the action. For the reasons discussed below, we conclude the parties here, by agreeing to the MOU, waived both aspects.

With respect to personal jurisdiction, paragraph 7 of the MOU expressly stated "[t]he Parties hereby submit to the jurisdiction of the Federal and State Courts in California . . . ." Further, in paragraph 8, the parties agreed to submit all disputes "to the Judicial Arbitration & Mediation Service in Los Angeles for exclusive and final resolution . . . pursuant to California law . . . ." "Code of Civil Procedure section 1293 . . . gives California courts personal and subject matter jurisdiction to enforce arbitration agreements formed in California." (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 504.) The parties' agreement to exclusively arbitrate any disputes in California constituted consent to submit to the jurisdiction of California courts to enforce that

agreement, including "by entering of judgment on an award under the agreement." (§ 1293.)

With respect to notice, paragraph 6 of the MOU stated the parties "shall provide notice in the English language to each other at the addresses set forth in the Agreement via Federal Express or similar courier," while paragraph 7 clarified the parties "consent to service of process in accord with the notice provisions above." Construed in tandem, these provisions leave little doubt the parties intended to supplant any statutory service procedures with their own agreement for notification via Federal Express. Section 1290.4, subdivision (a) gives effect to such an agreement by requiring that documents "be served in the manner provided in the arbitration agreement for the service of such petition and notice." That is, section 1290.4, subdivision (a) authorizes parties to an arbitration agreement to waive otherwise applicable statutory requirements for service of summons in connection with a petition to confirm an arbitration award and agree instead to an alternative form of notification, which is exactly what the parties did in paragraph 6 of the MOU.

The MOU's language confirms the parties' intent to replace "service of process" with the alternate notification method specified in the agreement. This circumstance distinguishes *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, which construed section 1290.4, subdivision (a). *Abers* involved leases with arbitration clauses that included a provision stating notices could be sent by mail. The homeowners in that case filed a petition to vacate an arbitration award and mailed it to the opposing party. *Abers* rejected the homeowners' claim that the mailing satisfied section 1290.4, subdivision (a): "Their

argument fails because it conflates the concept of *providing notice* with the concept of *serving process*." (*Abers*, at p. 1206.) "Because paragraph 16 of the parties' leases governs only *notice*, and not *service*, it does not qualify as a provision which specifies the manner in which a petition to vacate an arbitration award may be *served*. Consequently, the homeowners' reliance on those notice provisions as a means of demonstrating proper service of the petition necessarily fails." (*Id.* at pp. 1206-1207.) By contrast here, the MOU not only contemplated that notifications be sent via Federal Express, but also that such notifications would take the place of formal service of process.

It is true that section 1290.4, subdivision (a) refers to "service," but we do not agree the mere use of that word controls whether the statute is referencing formal service of process. *In re Jennifer O.* (2010) 184 Cal.App.4th 539 (*Jennifer O.*), which involved a juvenile dependency proceeding, faced an analogous issue. The father, who lived in Mexico, was mailed a notice of a hearing. Noting that Welfare and Institutions Code section 293, subdivision (e) required "[s]ervice of the notice," the father argued compliance with the Hague Service Convention was required. *Jennifer O.* rejected the claim, observing that the high court in *Volkswagenwerk* "held that despite the provision's broad language, the Convention applied only to service of process in the technical sense . . . ." (*Jennifer O.*, at p. 549.) Noting that the father had already made a general appearance in the case, *Jennifer O.* concluded that, notwithstanding the statutory language, "[s]ervice of notice on appellant of the six-month review hearing by first-class mail fully complied with California law . . . ." (*Id.* at p. 550; see *Kern County Dept. of*

*Human Services v. Superior Court* (2010) 187 Cal.App.4th 302,
308-311 (*Kern County*).)

Our conclusions as to California law are narrow. When
parties agree to California arbitration, they consent to submit to
the personal jurisdiction of California courts to enforce the
agreement and any judgment under section 1293. When the
agreement also specifies the manner in which the parties "shall
be served," consistent with section 1290.4, subdivision (a), that
agreement supplants statutory service requirements and
constitutes a waiver of formal service in favor of the agreed-upon
method of notification. If an arbitration agreement fails to
specify a method of service, the statutory service requirements
of section 1290.4, subdivisions (b) or (c) would apply, and those
statutory requirements *would* constitute formal service of
process. We express no view with respect to service of process
in other contexts.

E. *The Hague Service Convention Does Not Apply*

As the high court clarified, "[t]he only transmittal to which
the Convention applies is a transmittal abroad that is required
as a necessary part of service." (*Volkswagenwerk, supra,* 486
U.S. at p. 707.) Whether transmittal abroad is required as a
necessary part of service depends on state law. Because the
parties agreed to waive formal service of process under
California law in favor of informal notification, "this case does
not present an occasion to transmit a judicial document for
service abroad within the meaning of Article 1" of the Hague
Service Convention. (*Id.* at pp. 707-708; see *Kern County, supra,*
187 Cal.App.4th at pp. 308-311; *Jennifer O., supra,* 184
Cal.App.4th at pp. 549-550.)

Contrary to SinoType's arguments, this conclusion does not authorize circumventing the Hague Convention where the Convention would otherwise apply. We merely recognize that this case falls "outside the scope of its mandatory application," as the Convention has been interpreted in *Volkswagenwerk*. (*Volkswagenwerk*, *supra*, 486 U.S. at p. 706.) SinoType's arguments are similar to the arguments for broader mandatory application of the Convention made in *Volkswagenwerk*. The high court rejected those arguments, as do we. (See *id.* at pp. 702–705.)

Holding that the Convention does not apply when parties have agreed to waive formal service of process in favor of a specified type of notification serves to promote certainty and give effect to the parties' express intentions. Conversely, to apply the Convention under such circumstances would sow confusion and encourage gamesmanship and sharp practices. As one court observed, "precluding a contractual waiver of the service provisions of the Hague Convention would allow people to unilaterally negate their clear and unambiguous written waivers of service by the simple expedient of leaving the country." (*Alfred E. Mann Living Trust v. ETIRC Aviation S.A.R.L.* (N.Y.App.Div. 2010) 78 A.D.3d 137, 141; see *Masimo Corp. v. Mindray DS USA Inc.* (C.D.Cal. Mar. 18, 2013, No. SACV 12-02206- CJC(JPRx)) 2013 U.S.Dist.LEXIS 197706, at pp. *13-14.) Nothing in the language or history of the Convention suggests any intent for the treaty to be abused in such a manner.

Likewise, our conclusion promotes California's "long-established and well-settled policy favoring arbitration as a speedy and inexpensive means of settling disputes. [Citation.]

This policy is reflected in the comprehensive statutory scheme set out in the California Arbitration Act. (§ 1280 et seq.) The purpose of the act is to promote *contractual arbitration*, in accordance with this policy, as a more expeditious and less expensive means of resolving disputes than by litigation in court. [Citation.] 'Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts.'" (*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1431; see *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342.) Requiring formal service abroad under California law where sophisticated business entities have agreed to arbitration and a specified method of notification and document delivery would undermine the benefits arbitration provides. Uncertainty with respect to service would require court intervention to resolve, increase the time and cost of dispute resolution, and potentially call into question long-final arbitration awards. Such a result appears contrary to the Legislature's attempts to position California as a center for international commercial arbitration. (See *Credit Lyonnais Bank Nederland, N.V. v. Manatt, Phelps, Rothenberg & Tunney* (1988) 202 Cal.App.3d 1424, 1434.)

## III.  DISPOSITION

The judgment of the Court of Appeal is reversed.  The matter is remanded for the resolution of unadjudicated issues.


**CORRIGAN, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 24 Cal.App.5th 115
**Rehearing Granted**

_____

**Opinion No.** S249923
**Date Filed:** April 2, 2020

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Randolph M. Hammock

_____

**Counsel:**

Law Offices of Steve Qi and Associates, Steve Qi, May T. To; Law Offices of Steven L. Sugars and Steven L. Sugars for Defendant and Appellant.

Paul Hastings, Thomas P. O'Brien, Katherine F. Murray, Nicole D. Lueddeke; Blum Collins, Steve A. Blum and Chia Heng Ho for Plaintiff and Respondent.

Gibson, Dunn & Crutcher and Daniel M. Kolkey for California International Arbitration Council as Amicus Curiae on behalf of Plaintiff and Respondent.

Benson K. Lau and Adam M. Satnick for Pacific Rim Cultural Foundation as Amicus Curiae on behalf of Plaintiff and Respondent.

Covington & Burling, David B. Goodwin and Peter Trooboff for Professors of International Litigation as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Chia Heng (Gary) Ho
Blum Collins, LLP
707 Wilshire Boulevard, Suite 4880
Los Angeles, CA, 90017
(213) 572-0400

Steven L. Sugars
Law Offices of Steven L. Sugars
388 E. Valley Blvd., Suite 200
Alhambra, CA 91801
(626) 243-3343